416 P.2d 444

**The STATE of Arizona, Appellee,**

**v.**

**Ignacio MIRANDA, Appellant.***

**No. 2 CA–CR 60.**

Court of Appeals of Arizona.

July 7, 1966.

Rehearing Denied Aug. 8, 1966.
Review Denied Sept. 27, 1966.

---

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 1370. The matter was referred to this court pursuant to A.R.S. section 12–120.23.

**552**

---

Robert W. Pickrell, former Atty. Gen., Darrell F. Smith, Atty. Gen., by Walter O. Holm, Asst. Atty. Gen., for appellee.

George W. Oglesby, Phoenix, for appellant.

MOLLOY, Judge.

This is an appeal from a conviction of three counts of manslaughter in the driving of a motor vehicle while in the commission of an unlawful act not amounting to a felony with gross negligence. The criminal charges were the result of a one-car accident occurring on December 2, 1962, in Santa Cruz County, in the early hours of the morning as a result of which three passengers in the motor vehicle were killed. Consecutive sentences of not less than one nor more than three years were imposed upon each count.

There were six occupants of the car in question. The car impacted head-on into a steel lamp post in the outskirts of the City of Nogales, Arizona, and was telescoped together by the crash. A surviving occupant estimated the speed of the car prior to the accident to be seventy-five miles per hour. A blood test indicated that the defendant was presumptively (A.R.S. § 28-692) under the influence of intoxicating liquor. Evidence that the defendant was the driver of the vehicle consisted of testimony that (1) immediately after the accident the defendant was pinned behind the steering wheel, with his right foot jammed between the brake and the accelerator, (2) certain statements were made by the defendant immediately after the accident indicating that he was the driver of the car, (3) the only other person who might have been driving the car was found dead, the front part of his body protruding from the right (passenger's) side of the car with his legs pinned down in the front compartment of the car, (4) there was the body of another deceased passenger in the center of the front seat with legs pinned by the dashboard and (5) the car in question was owned by the defendant's mother.

The first point raised on appeal pertains to the disqualification of the presiding judge in Santa Cruz County by an affidavit of bias and prejudice filed in pursuance of 17 A.R.S. Rules of Criminal Procedure, Rules 196–200. At the time the defendant came before the court for arraignment on the morning of February 25, 1963, an affidavit of bias and prejudice was filed against Judge Gordon Farley, presiding judge of the superior court in Santa Cruz County. Judge Farley continued the arraignment until that afternoon, at which time it was heard by Judge Alice Truman, a visiting judge from Pima County. At the same time, Judge Farley asked counsel for their preferences as to which judge the case should be assigned. One of three judges indicated as a preference by the defendant was Judge Raul H. Castro. No objection was voiced at that time to Judge Truman handling the arraignment, but that afternoon, when the defendant came before Judge Truman for arraignment, the defendant objected to the jurisdiction of this judge to preside at the arraignment. It was the position of the defendant that unless the entire case were assigned to Judge Truman, there would be no jurisdiction in the court to proceed in the matter of arraignment. The defendant's objection was overruled and the court proceeded to arraign the defendant. The defendant refused to enter a plea and stood mute. Judge Truman, in pursuance of Rule 167, Rules of Criminal Procedure, entered a plea of not guilty as to all counts. Judge Truman thereafter set the case for trial on March 26, 1963.

The minute entries of the court reflect that at the time of the filing of the affidavit of bias and prejudice, Judge Farley assigned the case to Judge Truman for arraignment and, two days later, after the arraignment conducted by Judge Truman, assigned the case for all purposes to Judge Raul H. Castro. Judge Castro subsequently changed the trial date from March 26, 1963 to April 2, 1963, at which time the trial commenced which resulted in the defendant's conviction. Other than the objection voiced at the time of the arraignment before Judge Truman, there were no further objections to the jurisdiction of the court or to the procedure followed in the arraignment of the defendant.

It is the defendant's contention on appeal that he has never been properly arraigned and that the trial therefore was a nullity. Reliance is placed upon the case of Territory of Arizona v. Brash, 3 Ariz. 141, 32 P. 260 (1890), which decision involved a case in which the defendant was never arraigned before any judge. The decision holds that the subsequent trial and conviction were nullities.

The defendant relies upon several pronouncements of our Supreme Court pertaining to the mandatory duty of a presiding judge to assign the case to another judge upon the filing of an affidavit of bias and prejudice. In particular, a statement in Mosher v. Wayland, 62 Ariz. 498, 501, 158 P.2d 654 (1945), is relied upon:

"We have repeatedly held that when an affidavit of bias and prejudice is timely filed under the provisions of sec. 21–107, A.C.A.1939, the *presiding judge can perform no other function in connection with the case than to make an order that the trial be had before another judge*." (Emphasis added.) 62 Ariz. at 501, 158 P.2d at 655.

A more recent decision reaffirming this general law is Hordyk v. Farley, 94 Ariz. 189, 382 P.2d 668 (1963). Many of the decisions in this area are civil cases. Statutes providing for the disqualification of a judge in a civil action (A.R.S. § 12–409 et seq.) are expressed in somewhat different language than comparable rules for criminal actions, but the rules have been equated as to fundamentals by our Supreme Court. Marsin v. Udall, 78 Ariz. 309, 313, 279 P. 2d 721 (1955).

Rule 200, Rules of Criminal Procedure, reads as follows:

"When application is made to a judge for a change of judge, he shall proceed no further in the action except to call another *judge* to preside therein." (Emphasis added.)

 The defendant contends that the singular form of the word "judge" used in this rule forecloses the assignment of the case to more than one judge. While semantics favors the position taken by the defendant, we see no real substance in the objection raised. The trial of this action was conducted before Judge Raul H. Castro, as to whom the defendant stated he had a preference. There were no judicial rulings involving discretion made by any other judge. The arraignment before Judge Truman was in pursuance of Rules of Criminal Procedure, which under the circumstances of this particular case spelled out her duties explicitly and left no room for discretion.[1] As indicated previously,

1. Applicable rules read:
"Rule 160. Arraignment of defendant
"When an indictment has been found or an information filed against a person, he *shall*, before he is put on trial for the offense charged, be arraigned by having the charge stated to him by the clerk or judge in open court and by being called upon to plead thereto. If the defendant so demands before he pleads, the indictment or information *shall* be read to him by the clerk or judge. An entry of the arraignment shall be made of record."
"Rule 161. True name on arraignment
"When the defendant is arraigned, he *shall* be informed that if the name by which he is charged is not his true name he must then declare his true name, or be proceeded against by the name in the indictment or information. If he gives no other name, the court may proceed accordingly. If he alleges that another name is his true name, the

the defendant had no objection to Judge Truman except that he was insisting the entire case be handled, both as to the trial and all preliminary procedural matters, by the same judge. We do not believe that our law requires so much. Generally, the disqualification of a judge does not prevent him from performing ministerial acts not involving judicial discretion:

"As a general rule, disqualification of a judge relates only to judicial acts or to acts which call for the exercise of a judicial discretion, and does not prevent the judge from performing, or necessarily render invalid, mere formal preliminary or ministerial acts." 48 C.J.S. Judges § 97 a, p. 1106.

The reasoning of Marsin v. Udall, 78 Ariz. 309, 279 P.2d 721 (1955), lends support to our belief that the matter of a disqualification of a judge should not be viewed from its most technical aspects, but rather from the standpoint of substance. In Marsin, our Supreme Court held that the fact that a judge had ruled upon preliminary matters not going to the ultimate issues would not foreclose a litigant from exercising the privilege of filing an affidavit of bias and prejudice. The reasoning of the court required the express disapproval of a prior pronouncement of the court.[2]

The defendant suggests that he was actually prejudiced in this case because motions to quash the information must be filed before arraignment. The answer to this objection is that there was no motion to quash filed, and no showing that had there been a motion to quash filed

the ruling thereon would not have been deferred to Judge Castro. This court will not reverse because of mere possibility of prejudice. Art. 6, § 27, Arizona Constitution, A.R.S.

The next assignment of error complains that a requested instruction on circumstantial evidence was refused which would have informed the jury that the case of the state rested on circumstantial evidence, that a conviction on such evidence is not warranted when the circumstances proven are " * * * capable of explanation upon any reasonable hypothesis consistent with the defendant's innocence, * * * " and that conviction on such evidence would not be proper unless the proof be " * * * very strong and cogent. * * * "

While the defendant's instruction was refused, the court did give an instruction defining the nature of circumstantial evidence, as to which the defendant has no quarrel, and instructed the jury, inter alia:

"You are instructed to warrant a conviction upon circumstantial evidence each fact necessary to the conclusion shown to be established, that is the guilt of the defendant, must be proven by competent evidence beyond a reasonable doubt and all facts and circumstances proven should not only be consistent with the guilt of the accused but consistent with each other and *not consistent with any other reasonable theory or conclusion than that of his guilt* and for you to produce in your minds the reasonable conclusion the defendant committed the offense charged against

---

court *shall* direct an entry thereof in the minutes and record of the arraignment, and the subsequent proceedings may be had against him by that name, referring also to the name by which he was first charged."

Rule 167. Entry of plea of not guilty upon defendant standing mute or pleading evasively or upon failure of corporation to appear

"If the defendant is a corporation and fails to appear, or if any defendant

stands mute or pleads evasively, a plea of not guilty *shall* be entered of record." (Emphasis added.)

2. In Arizona Conference Corp. of Seventh Day Adventists v. Barry, 72 Ariz. 74, 76, 231 P.2d 426, 427 (1951), the court had indicated that " * * * ruling on any litigated or contested matter whatsoever in the case, * * * '" would foreclose an affidavit of bias as to such judge.

him, you are instructed that circumstantial evidence is not as a matter of law inferior to direct evidence. The two kinds of evidence are in effect the same. If equally convincing and if equally governing, they are entitled to the same weight.

"I also instruct you members of the jury that you are not permitted on circumstantial evidence alone to find the defendant guilty of the crime charged against him unless the proven circumstances not only are consistent with the hypothesis that the defendant is guilty of a crime with which he is charged *but are irreconcilable with any other rational conclusion.*" (Emphasis added.)

While the wording chosen by the court does not contain the expression " * * * inconsistent with every reasonable hypothesis of innocence," which particular language has been used by our Supreme Court in a number of decisions, the latest being State v. Thompson, 100 Ariz. —, 415 P.2d 566 (released June 16, 1966), we hold that the language used by the trial court, particularly those portions that we have emphasized in the above quotation, covers the substance of this law in language which a jury could well understand. Accordingly, we see no error. State v. McLain, 74 Ariz. 132, 245 P.2d 278 (1952).

The next matter called to this court's attention is the denial of a requested instruction pertaining to a presumption of the continued existence of an established fact of a continuous nature. This instruction was aimed specifically at the testimony of a passenger in the back seat of the car in question who testified that, though he was asleep at the time of the accident, approximately two miles before the crash he had seen that the driver of the vehicle was not the defendant but one of the other passengers. The person so designated was the passenger found dead after the impact, with the top part of his body hanging out of the right front door. The instruction requested would have specifically informed the jury that "[t]he act of driving an automobile is a fact of continuous nature" and that if they accepted the fact that the deceased was not driving two miles from the crash, there was a "presumption in law" that such condition continued to exist until the impact, which presumption could be overcome only by evidence sufficient to raise more than a "doubt" in their minds.

While the trial court did not give the requested instruction, it did give a general instruction, as to which the defendant finds no fault, in this language:

"You are further instructed that proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference within logical limits that it exists at a subsequent time. The limits of time within which the inference of continuousness poses a sufficient probative force, varying with each case, is always strongest in the beginning. The inference steadily diminishes in force with lapse of time at a rate proportionate to the quality of prominence belonging to the fact in question until it fixes or perhaps is supplemented by a directly opposite inference. In other words, it will be inferred that a given fact or set of facts, the existence of which at a particular time is once established in evidence, continues to exist so long as such facts usually do exist. Where a fact or condition is not logically continuous in its nature, there is no presumption of its continuousness. Moreover, the presumption does not apply where there has been a change in the conditions."

Inferences of continuance of facts are factual inferences, which are rebuttable. 31A C.J.S. Evidence § 124(1), p. 225. Their strength depends upon the nature of the particular fact and the surrounding circumstances. As Wigmore points out: "That a soap-bubble was in existence half-an-hour ago affords no inference at all that it is in existence now; that Mt. Everest was in existence ten years ago is strong evidence that it exists yet; * * *." 2 Wigmore, Evidence § 437(1), p. 413 (3d ed.). We believe that the general instruction given suf-

ficiently covered any applicable law and that it was not error for the trial court to fail to characterize the act of driving as being one to which a legal presumption necessarily pertained. Whether the driving of the subject car was "a fact of continuous nature" depended upon whether the automobile stopped at any pertinent time, and this in turn depended upon the credibility of a witness whose veracity was under attack by the prosecution. Under these circumstances, the requested instruction would have come "perilously near to a comment on the evidence." Riley v. State, 50 Ariz. 442, 457, 73 P.2d 96, 103 (1937).

The decision of Ohio Bell Telephone Co. v. Lung, 129. Ohio St. 505, 196 N.E. 371 (1935), relied upon by the defendant, we find not to be in point, in that it is not a decision dealing with jury instruction. The case holds that the undisputed evidence that one of two persons was driving a car when they departed on a journey, in the absence of evidence to the contrary, was "sufficient to warrant the jury in finding" (196 N.E. 373) that the same person was driving the same car at the time of its crash.

■ The next assignments relate to the alleged impropriety of cross-examination of the defendant by the county attorney. It was the defendant's testimony on direct examination that while he had driven the car on the night in question while south of the border in Mexico, he had not driven in the United States. Thereupon the following questions and answers occurred on cross-examination:

"Q Did you drive on this side of the line?

"A No, because I don't want to drive.

"Q You don't want to drive?

"A I can't drive.

"Q You can't drive? Why did you drive on that side when you can't drive on this side?"

At this point an objection was made by the defendant's counsel which was never ruled upon by the court, because the county attorney withdrew the last question asked. It is suggested on appeal that these questions and answers in some way brought to the jury's attention that the defendant had previously been convicted of a crime. While this import may have been gleaned by counsel well-acquainted with the history of the defendant, this court is unable to arrive at the conclusion that the quoted portion of the transcript in any way injected a previous criminal record of. the defendant. We hold that it was proper cross-examination. It was an attempt to probe the credibility of the defendant's testimony on the principal factual issue in the case and even though embarrassing matter might have been thus elicited, there would have been no error. State v. Carter, 1 Ariz.App. 57, 399 P.2d 191 (1965). We concur with Wigmore that " * * * no safeguard for testing the value of human statements is comparable to that furnished by cross-examination. * * *" 5 Wigmore, Evidence § 1367, p. 29 (3d ed. 1940).

■ The next allegation of error is that the county attorney referred in his argument to the prior criminal record of the defendant, consisting of convictions for burglary and grand larceny. During the cross-examination of the defendant, these prior convictions were established by way of impeachment. The prior convictions had occurred only seven months prior to the accident in question, at a time when the defendant was 17 years of age. In opening argument, the county attorney in comparing the veracity of the defendant with that of witnesses for the prosecution, referred to the defendant as " * * * a convicted burglar and a thief * * *." Subsequently, defendant's counsel argued as follows:

"I don't claim that this boy is perfect, but I don't think he can be branded as a burglar and a common thief. This all took place when he was 17 years old. He may be a little bit wayward, but he is not a criminal and I hope that this jury won't make a criminal out of him; make a convict out of him by your verdict."

On final argument, the county attorney again maintained that the record showed that the defendant was a convicted criminal as to burglary and grand theft, that this should be considered in determining whether the defendant had spoken the truth during the trial, and argued that the defendant was not " * * * worthy of belief." Such arguments as these we hold were proper in view of the record of the prior convictions admitted for the purpose of impeachment. 23A C.J.S. Criminal Law § 1100, p. 183.

■ However, in his closing argument the county attorney also said:

"It was less than a year ago on the 28th day of May, I believe it was brought out, 1962, when he was convicted of burglary and grand theft, and we should hope for a change in his life, and if he is not held accountable for his wrongful conduct, then we can expect a wrong change in his life; truly a wrong change if he is allowed to commit this gross tragedy with impunity. Then, we can expect a change; a change for the worse, if that is possible."

The above argument departs from an attack upon the credibility of the defendant and uses the fact of the prior conviction in connection with an argument that the defendant's actions which were the subject of these criminal charges should be punished. The evidence of the prior convictions was admitted for a limited purpose only and the use of these convictions in argument for any other purpose is improper. State v. Mobley, 369 S.W.2d 576 (Mo.1963); 23A C.J.S. Criminal Law § 1100, p. 185.

■ However, in this case we have no objection made to the argument when presented, and no motion for a mistrial. We believe that any prejudice that might have resulted from this argument to be slight, and that it would have been cured by an admonition and/or rebuke from the trial court if an objection had been made. Under these circumstances, we hold that no reversible error was committed. State v. Boozer, 80 Ariz. 8, 291 P.2d 786 (1955);

23A C.J.S. Criminal Law § 1112, p. 224; 53 Am.Jur. Trial § 505, p. 407.

The last matter called to this court's attention is the conviction of three felonies which arise from the same act or acts of the defendant. It is the defendant's contention that his conduct can amount at most to only one felony.

The question of whether a single course of conduct can result in multiple offenses when there are multiple victims has resulted in a definite split of authority in this country. 22 C.J.S. Criminal Law § 9(2), p. 29; 21 Am.Jur.2d Criminal Law § 188, p. 242; Annot. 113 A.L.R. 222. Insofar as multiple deaths from the negligent operation of a motor vehicle is concerned, the majority view appears to be in favor of considering that there may be multiple offenses. 7 Am.Jur.2d Automobiles and Highway Traffic § 344, p. 890; Annot. 172 A.L.R. 1053 at 1062.

■ Pertinent authority establishes that it is the intent of the legislature which controls and that there is no constitutional prohibition against legislation which provides for multiple crimes arising from single acts against multiple victims. Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); People v. Golson, 32 Ill.2d 398, 207 N.E.2d 68 (1965). Ladner, supra, holds that when a statute is ambiguous on this score, the ambiguity should be resolved in favor of the defendant.

The statute under which the defendant was prosecuted is in Ch. 2 of our Criminal Code (Title 13 A.R.S.) which is the chapter on homicide. A.R.S. § 13-456, subsec. A, in pertinent parts, reads as follows:

"Manslaughter is of three kinds:

\* \* \* \* \* \*

"3. In the driving of a vehicle:

"(a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act which might produce death in an unlawful manner, and with gross negligence."

This section is not intelligible unless the prior section is read also:

"§ 13–455. Manslaughter defined

"Manslaughter is the unlawful killing of a human being without malice."

■ This language makes sufficiently clear, in the opinion of this court, that the legislature intended that the killing of each human being, under the circumstances described in the code, would constitute a separate offense. Respect for human dignity is of the essence of our way of life. Certainly it is in keeping with this spirit that the wrongful killing of each human being should be treated as a separate offense.

In State v. Singleton, 66 Ariz. 49, 57, 182 P.2d 920 (1947), our Supreme Court was presented with jury verdicts of conviction as to a count of murder and of manslaughter, and of acquittal as to other counts of murder and assault with intent to murder, when all charges arose from the same series of shotgun blasts. The contention made on appeal was that the verdicts were necessarily inconsistent. Our court said:

"As to the contradiction that defendant claims is inherent in the verdicts, we find it to be the settled majority rule of law that *although several shots be fired in such quick succession that they constitute, in effect, but one act, still, the result may involve more than one offense* so that an acquittal on a trial for killing one will not prevent prosecution for killing another. The offenses though occurring almost simultaneously in point of time are rendered distinct and severable by a plurality of shots and of objects." (Emphasis added.) 66 Ariz. at 57, 182 P.2d at 925.

Though the Singleton case is clearly distinguishable because of the " * * * plurality of shots * * *," the reasoning of the case seems controlling here. State v. Fredlund, 200 Minn. 44, 273 N.W. 353, 113 A.L.R. 215 (1937), one of the authorities cited by our Supreme Court in support of the above quoted statement from Singleton,

is a case in point. Fredlund involved two homicide charges resulting from one automobile accident. The court held that an acquittal as to one charge did not prevent a conviction as to the other indictment. A well-reasoned opinion supporting the result reached here is State v. Whitley, 382 S.W.2d 665 (Mo.1964).

That a driver of a vehicle might be guilty of an offense as to one passenger and not as to the others is not beyond the possibilities of our law. There could, for instance, be a factual situation involving a drunken quarrel between the driver and one passenger, with other passengers not participating. In such a case, a jury might very well be inclined to bring in different verdicts as to the various passengers, as the jury in Singleton brought in different verdicts as to different victims of the shotgun blasts.

Absent such differentiating facts as to the various victims, as we have none in this case, there might be serious question as to whether *multiple trials, as sanctioned in Fredlund,* would clash with concepts of fundamental fairness. In People v. Golson, 32 Ill.2d 398, 207 N.E.2d 68 (1965), the Supreme Court of Illinois refused for this reason to permit a second trial to attempt to secure a second conviction under the felony-murder doctrine.

■ Not having this problem of multiple trials before us, and conceiving that the causing of the death of three human beings is a grosser offense than causing the death of a lesser number, we decline to accept the appellant's view that only one offense is involved here.

Judgment affirmed.

KRUCKER, C. J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.