Commonwealth v. Cox, Appellant.

Argued December 14, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and SPAULDING, JJ. (HOFFMAN, J., absent).

*Richard B. Klein,* with him *Korn and Cohan,* for appellant.

*Victor J. DiNubile, Jr.,* Assistant District Attorney, with him *Alan J. Davis,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., March 23, 1967:

Following jury verdicts of guilty on all charges included in three bills of indictment, No. 68 corrupting the morals of a minor; No. 69 assault and battery, indecent assault, aggravated assault and battery, assault and battery with intent to ravish, rape; No. 70 statutory rape; motions for a new trial and in arrest of judgment were denied and judgments of sentence imposed. On the verdict at No. 70 (statutory rape), the sentence was "not less than 5 years nor more than 10

years in the State Correctional Institution of Philadelphia", and on the verdict at No. 68 (corrupting the morals of a minor), it was not less than 1½ years nor more than 3 years in the Philadelphia County Prison, to begin at the expiration of sentence on Bill No. 70. Sentence was suspended on Bill No. 69.

No appeal was taken by the defendant from any of the foregoing sentences within the period generally allowed by statute. However, as a result of a proceeding filed pursuant to the Post Conviction Hearing Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1 et seq., this appeal was permitted to be filed nunc pro tunc.

These prosecutions of defendant were the result of an alleged attack made on Sandra Toney (age 13) on April 11, 1964. The evidence is sufficient to establish that this girl was accosted by the defendant and pulled into an alley between two automobiles about 2:30 a.m. as she was returning home from a party alone; that at knife point she was compelled to kiss defendant, to submit to his feeling her breasts, to submit to the removal of her underclothing, to turn around and bend over, when she was raped from the back, an entry being made into her vagina. Defendant was apprehended near the scene with his pants open. A knife, which he was seen dropping, was also found nearby.

Sandra was taken to St. Luke's Hospital where she was examined. The report of that examination is the basis for one of defendant's six assignments of error in his trial. It is his contention that the Commonwealth withheld from him knowledge of favorable contents of the report thereby greatly prejudicing his case. Our examination of the original record[1] shows that no mention of the hospital report was made in the Commonwealth case although the fact was established that

---

[1] Defendant was permitted to omit printing the record.

Sandra had gone to St. Luke's Hospital. However, at the conclusion of the Commonwealth's case, counsel for defendant requested that the medical report be made available to him, and the district attorney, Mr. Charles Bogdanoff, was directed by the court to produce the report. This transpired at the morning session on June 30, 1964. Later in the morning the court again directed Mr. Bogdanoff to secure the report and extended the lunch hour to enable him to do so. Thereafter a colloquy between the court, district attorney and defense counsel showed that all parties believed the medical report from St. Luke's Hospital, limited to a laboratory vaginal smear test, negative for spermatozoa, was the only report available. This fact was stipulated by the parties and the limited report offered in evidence. As a result of this stipulation that the laboratory report was the only one in existence defendant argued to the jury: "As to the hospital report, it merely states there was no spermatozoa present, which means if there was a rape there was no climax. There is no testimony that the girl was injured, bruised, no redness, penetration, none of this was brought out by the Commonwealth, who has the burden to show that this man is guilty beyond a reasonable doubt."

In fact the hospital records did contain other data, including a description of the physical condition of Sandra on her arrival at St. Luke's Hospital on the morning of the attack upon her and also her statement that she had been raped. Copies of these additional reports are attached to defendant's supplemental petition for post-conviction relief. There is also attached to said petition a copy of a letter from St. Luke's Hospital to the Neuropsychiatric Department of the Philadelphia Court of Quarter Sessions dated May 25, 1964, which reveals the contents of these additional records. The existence of these records and letter is admitted by the Commonwealth, and the contents referred to in its brief.

Further, there is no denial of the allegation contained in defendant's first petition that Honorable J. SYDNEY HOFFMAN, presently a member of this Court, who sat as a committing magistrate in this case, at which time he was a member of the County Court of Philadelphia, ordered the hospital records made a part of the record of these cases.

Thus we find a record lacking in evidence which the committing magistrate, the trial judge, and both counsel thought should be presented to the jury, but through misinformation, inadvertence, neglect, or other cause, was not produced at the trial because its existence was not determined. Since it was on the word of the district attorney that he had investigated at the direction of the court and found no additional records other than the results of the spermatozoa test, which induced counsel for the defendant to stipulate as previously stated, we conclude that the nonproduction of additional records was not caused by defendant. On the other hand, we cannot reach the conclusion from this record that such data was suppressed willfully by the district attorney. Had he knowledge of some fact which would have militated in defendant's favor it would have been his moral and legal duty to bring it to the jury's attention. *Commonwealth v. Miller,* 203 Pa. Superior Ct. 511, 201 A. 2d 256 (1964). However, whatever the reason, the only conclusion to be arrived at from the record before us is that the existence of the additional hospital records was not known by either the prosecution or the defense at the time of the trial. It would thus become after-discovered evidence and, considered as such, to justify a new trial it must meet the requirements set forth in *Hagopian v. Eskandarian,* 396 Pa. 401, 407, 153 A. 2d 897, 901 (1959), i.e., "[it] must have been discovered after the trial, be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach

credibility, and must be such as would likely compel a different result."

Although we cannot charge defendant or his counsel with lack of diligence in discovering the additional records, we are led to the conclusion that the evidence, had it been produced, would not likely have impelled a different result. The main, if not the only purpose of offering it, would have been to affect the credibility of Sandra in her statement that her vagina had been entered. The fact that she showed no signs of physical abuse would not have established the fact that she had not been raped. On the other hand the report did contain her statement of having been raped, which would have aided the Commonwealth case and prejudiced defendant. Therefore, the records under discussion, although after-discovered, would not satisfy the rule and justify a new trial; nor can we see that defendant was prejudiced since he had the benefit of his counsel's argument that the Commonwealth had failed to produce such evidence of abuse. This assignment of error must be overruled.

Defendant secondly complains that the trial judge failed to charge that anal intercourse or sodomy does not constitute rape. Although defendant includes in his brief testimony allegedly given by Sandra at the hearing before the committing magistrate to establish sodomy, such testimony, if in fact given at said hearing, has not been made part of the record before us. Therefore, it may not be considered. On the present record there is nothing that would justify such a charge as the defendant suggests. Defendant denied molesting Sandra in any manner and her testimony is clearly that he penetrated her vagina as she was in a bent over position. No mention is made of any other relationship. Furthermore, no request was made for such a charge as is presently requested, nor was any exception taken to the charge on account of its absence. We find no merit in this argument.

Next, defendant complains that the jury was not instructed that it might return a verdict of guilty of assault and battery with intent to ravish and not guilty of rape if they found that no penetration had been accomplished. Again no request was made for such a charge nor an exception taken to the charge on this point. However, the trial judge, after defining all the crimes with which defendant was charged, explaining how the lesser ones would merge into the greater ones should the jury find they had been committed, told the jury, "I say to you if you should find the defendant guilty of rape the crime of assault and battery with intent to ravish I think would merge even into the crime of rape", and later in the charge, "You can find the defendant guilty of all or any of these charges, or you may find him not guilty of all, . . . each bill of indictment will carry within it a separate finding by you, and that is a matter entirely for you." Reading the charge as an entirety we conclude that the jury was adequately instructed on this point of complaint.

We have studied the charge earnestly to determine if error was committed in the manner the trial judge reviewed the evidence inasmuch as defendant contends there was bias and prejudice against him shown by the trial judge. We find no justification for such a contention. The court referred to the testimony and contention of each side. It explained the meaning of credibility, pointing out that the victim had given conflicting stories about being raped or having rape upon her merely attempted. Its attention was also directed to the fact that she had at first denied ever having had intercourse before this day and then later admitting that she had had relations with her boy friend on two occasions. This is not a case depending entirely on the testimony of the victim. There are several circumstances which corroborate her testimony, i.e., the presence of the defendant with his pants open, his flight

and the finding of his discarded knife, are facts lending corroboration to her account. It is noted again that no additional instructions were requested by defendant's counsel on this point. This assignment of error must also be dismissed.

Defendant's final complaints relate to the sentences. First he complains that the crime of corrupting the morals of a minor and the crime of statutory rape merged and for that reason but one sentence should have been imposed. The subject of merger of criminal offenses is fully covered in *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 21 A. 2d 920 (1941), which recognizes the following rules: (a) where one crime is included in, and forms a necessary part of another and is but a different degree of the same offense, and where on a prosecution for the higher crime a conviction may be had for the lower, then a conviction or an acquittal of the higher will bar a prosecution for the lower, or for any crime of which the lower is an essential ingredient or element; (b) the same act or group of acts may constitute two or more distinct offenses, different in kind as well as in degree, and each separate step in a transaction may be made a crime; (c) whether a single act or series of acts constitutes two or more separate offenses is determined by whether each offense requires proof of facts additional to those involved in the other.

In *Commonwealth ex rel. Shaddock v. Ashe*, 340 Pa. 286, 17 A. 2d 190 (1941), charges of assault and battery with intent to commit rape and aggravated assault and battery were held to be merged in the charge of rape because the assault and battery charges were constituents of rape, a forcible act.

In *Commonwealth v. Dulacy*, 204 Pa. Superior Ct. 163, 203 A. 2d 587 (1964), this question was before this Court in a different form. In that case the defendant was acquitted of statutory rape and convicted of con-

tributing to the delinquency of a minor. We sustained that conviction because in addition to the alleged act of fornication the defendant had contributed to that girl's delinquency by supplying her with beer and keeping her out all night.

In the case now before us the only acts, other than the fornication, on which a charge of corrupting could be based, are the acts of fondling the breasts of the victim and forcing her to kiss him, both of which occurred during or immediately before the act of fornication was being committed. These acts are so clearly related to the act of fornication that we are led to the same conclusion which was reached by the Supreme Court of California in *People v. Greer*, 30 Cal. 2d 589, 184 P. 2d 512 (1947), and followed by the Court of Appeals of Maryland in *Bennett v. State*, 229 Md. 208, 182 A. 2d 815, 4 A.L.R. 3d 862 (1962), under similar factual situations that the crime of contributing to delinquency was merged in the crime of statutory rape. Therefore, it was error for the lower court to impose separate sentences on each of these two crimes.

Finally, defendant questions the propriety of permitting verdicts of guilty to stand on indictment No. 69, charging various forms of assault and battery and rape, in face of the verdict on indictment No. 70 charging statutory rape. We find no impropriety in the action of the lower court in permitting both verdicts to stand. The crimes of assault and battery were not merged as essential elements of the crime of statutory rape. As to the charge of rape the evidence was sufficient to sustain the charge of statutory rape of a minor under the age of 16, which does not require force, as well as forcible rape. We have not had our attention directed to any decision of our appellate courts on this point. However, the Court of Oyer and Terminer of Fayette County in *Commonwealth v. Garybush*, 12 Fayette L.J. 47 (1949), held that a man over 16 years of

age may properly be convicted both of common law and statutory rape for the same offense.[2] We subscribe to this view since one unlawful act may constitute more than one crime. As long as a defendant is not punished twice for the same act he has no cause of complaint. *Commonwealth ex rel. Brockway v. Keenan,* 180 Pa. Superior Ct. 78, 118 A. 2d 255 (1955); *Commonwealth v. McCord,* 116 Pa. Superior Ct. 480, 176 A. 834 (1935). Sentence having been suspended in indictment No. 69, this assignment of error is overruled.

Judgment of sentence on indictment No. 68 charging corrupting the morals of a minor is reversed, judgment of sentence on indictment No. 70 charging statutory rape is affirmed and the order suspending sentence on indictment No. 69 is affirmed.

HOFFMAN, J., took no part in the consideration or decision of this case.

---

[2] Also see *Commonwealth v. Samyan,* 21 Pa. D. & C. 401 (1934), holding that a man over 16 years of age who has unlawful carnal knowledge of a woman child under 16 years of age forcibly and against her will may be properly convicted of both common law and statutory rape, but the sentence imposed can be no greater than would have been proper had the conviction been one count only.