464 A.2d 1283

**COMMONWEALTH of Pennsylvania**

**v.**

**Charles FRISBIE, Appellant.**

Superior Court of Pennsylvania.

Submitted December 14, 1982.

Filed Aug. 12, 1983.

Petition for Allowance of Appeal Granted for Commonwealth Jan. 19, 1984.

Petition for Allowance of Appeal Denied for Defendent Jan. 19, 1984.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

This is an appeal from judgment of sentence dated September 24, 1981. Appellant, Charles Frisbie, raises two issues for our consideration. The first issue is whether the trial judge erred in ruling that the evidence presented at appellant's trial was not sufficient to put appellant's sanity in issue. The second issue is whether the trial judge erred in sentencing appellant to one year probation on each of nine counts of recklessly endangering another person when these charges arose out of an automobile accident resulting from one unlawful act. Of these two issues, we find only the second to be meritorious. We therefore vacate the sentences imposed below on all counts of recklessly endangering another person and remand for resentencing.

Appellant was arrested on May 2, 1980. The circumstances of his arrest were as follows. At 5:00 p.m., two police officers noticed appellant's vehicle proceeding west on Tasker Street in Philadelphia in an erratic manner. It seemed that appellant's vehicle was continually stopping and moving forward in a jerking motion. Upon concluding that something was wrong, one of the officers, Elden Olsten, approached appellant's vehicle while signaling appellant to pull over. Appellant locked his doors and rolled up his windows. He then reclined in his seat, putting his hands behind his head, and smiled. The appellant drove off. Officer Olsten returned to the police van. Upon his return

he indicated to his partner that appellant seemed "spaced out" and that they were going to have trouble with him.

Because of traffic, the officers were compelled to follow directly behind appellant until they reached Broad and Tasker Streets. At this point Officer Olsten approached appellant's vehicle again, but before he could break the window to gain entry into the interior of the vehicle, appellant propelled his vehicle forward, through a crowd of people in the street waiting for a trolley. Several persons suffered injury.

Appellant then entered the Schuylkill Expressway pursued by a second police van. A high speed chase ensued. On three occasions during the chase, the police officers narrowly avoided colliding with appellant's vehicle when it veered in front of them. Finally, appellant lost control of his vehicle and it overturned on the expressway. Whereupon, appellant was apprehended.

After several months of delay because appellant was incompetent to stand trial, appellant was tried before the Honorable Alfred J. DiBona, Jr., sitting without a jury, on nine counts of recklessly endangering another person [1] and one count of leaving the scene of an accident involving personal injury.[2] His sole defense at trial was that he was legally insane in accordance with the M'Naghten test [3], when he committed the offenses charged. After two days of trial, appellant was convicted on all counts. Post-verdict motions were filed and later denied. Appellant was then sentenced to one year probation on each of the criminal counts of which he was convicted. This appeal followed.

1. 18 Pa.C.S.A. § 2705.

2. 75 Pa.C.S.A. § 3742.

3. The M'Naghten test of insanity relieves a defendant of criminal responsibility for his actions if at the time he committed a crime he was under "such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or if he did know it, that he did not know he was doing wrong." *Commonwealth v. Woodhouse*, 401 Pa. 242, 164 A.2d 98 (1960).

## I.

 Appellant argues that sufficient evidence was presented at his trial to raise the issue of insanity. He argues further that the Commonwealth had the burden of proving his sanity beyond a reasonable doubt[4]; and that it failed to discharge that burden. In light of *Commonwealth v. Thompson*, 274 Pa.Super. 44, 417 A.2d 1243 (1979), appellant's arguments must be rejected.

The crux of the problem in the instant case is that the defense presented testimony of appellant's insanity and the Commonwealth made no effort to present evidence of appellant's sanity, other than, perhaps, testimony concerning the circumstances of the incident and what it could elicit from cross-examination. Also, the trial judge did not find that appellant's sanity had been proven beyond a reasonable doubt. *Commonwealth v. Thompson, supra,* analyzes similar circumstances.

In *Thompson*, the defendant testified at trial that he had no knowledge of the crime of which he was charged, and that if anyone participated in the crime, it was his "consciousness," a separate person that died in Bucks County. Notwithstanding his testimony, the trial judge convicted defendant of burglary, robbery, criminal conspiracy, and aggravated assault. On appeal, the defendant argued that his testimony raised the issue of insanity, and accordingly the Commonwealth could no longer rely on any presumption of sanity, rather it had to prove his sanity beyond a reasonable doubt. In an opinion by JUDGE CAVANAUGH, this court said:

> [c]ertainly it would work an unreasonable mischief if at the conclusion of every case the court on request had to send an insanity issue to the jury on the insistence of the defendant that a view of all the evidence raises the issue and requires a determination of whether the Common-

4. Once the insanity issue is raised by evidence from whatever source, the Commonwealth bears the burden of proving beyond a reasonable doubt that a defendant was sane at the time he committed a crime. *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974).

wealth has proved sanity. It appears, then, that there must be a threshold determination by the trial judge to determine if ... the 'evidence in the case from whatever source' is sufficient to raise the issue of insanity.

*Commonwealth v. Thompson, supra,* 274 Pa.Super. at 49, 417 A.2d at 1246. Upon examining the defendant's testimony, the court in *Thompson* found the testimony to be sufficiently relevant to a determination of the defendant's sanity under the M'Naghten test that the issue of insanity had to be considered. JUDGE CAVANAUGH went on to state that:

[o]nce raised the issue becomes one for the factfinder. The initial question must be whether the issue has been creditably raised or whether it is simply an artifice. Of course, if the factfinder decides on initial examination that the evidentiary source of the insanity issue is wholly contrived, that it is a complete sham, the evidence is rejected and there is no insanity issue for the Commonwealth to meet.... In this non-jury case the trial judge in his opinion following post-trial motions stated: "the court found the defendants [sic] insanity testimony to be a complete sham. The story concocted by Thompson demonstrated his intelligence and his awareness of the situation." This issue was an issue best decided by the factfinder and our examination of the record leads us to conclude that his finding should not be disturbed.

*Id.,* 274 Pa.Superior Ct. at 50, 417 A.2d at 1246–47. JUDGE CAVANAUGH concluded that there had been no error committed below.

■ As we read *Thompson,* the trial judge will first determine that the evidence of insanity is relevant to a determination of the defendant's sanity under the M'Naghten test. Then, even if the evidence is relevant and the Commonwealth has not introduced independent proof that a defendant was sane, the defendant is not necessarily entitled to be acquitted by reason of insanity. The factfinder upon examining the evidence of insanity and its source must determine if the issue of insanity is creditably raised. It

may reject the evidence of insanity, the effect of which is to relieve the Commonwealth from having to adduce proof beyond a reasonable doubt that the defendant was sane. If that determination is amply supported by the record, it may not be disturbed on appeal.

The evidence at appellant's trial consisted primarily of the Commonwealth's witnesses, three police officers, and appellant's sole witness, a psychiatrist, Dr. Perry Berman. Appellant argues that the testimony of two of the police officers and that of Dr. Berman was sufficient to raise the issue of insanity.

■ One of the police officers described appellant's appearance as "spaced out" and stated that he had "glazed eyes". Another testified that he spoke incomprehensibly and was belligerent when finally taken into custody. We acknowledge that their description of appellant lends support to the conclusion of Dr. Berman that appellant suffered from a mental illness when the incident occurred. However, mental illness alone does not constitute legal insanity. *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974). The essence of insanity under the M'Naghten test is a defendant's ability to know the nature and quality of his actions or know whether they are wrong or right. The testimony of the police officers that appellant appeared "spaced out" with "glazed eyes" and acted belligerently sheds no light on whether appellant knew the nature and quality of his acts or knew they were wrong.

The principal evidence of appellant's legal insanity was the testimony of Dr. Berman. Dr. Berman opined that at the time of the incident appellant "did not know the nature and quality of his acts nor did he know they were wrong," because appellant suffered from manic-depressive psychosis. N.T. Volume II at 75 and 76. He testified that appellant was under the delusion that he was being guided by demonic forces, and that appellant believed that the crowd of persons that blocked his way on the date of the incident were not really "flesh and blood" human beings who could be injured or killed.

Judge DiBona in his opinion denying appellant's post-verdict motions said "[t]his court, sitting as factfinder, found the testimony of the defense concerning the ability of the defendant to differentiate between right and wrong on the date of the incident to be unworthy of belief. Accordingly, there being no insanity issue for the Commonwealth to meet the defendant's post-verdict motions on this ground was denied."

■ Apparently, the trial judge totally discounted the testimony of appellant's expert witness. In this respect, the instant case is somewhat different factually from *Thompson*. In *Thompson*, the trial judge rejected the defendant's insanity evidence, his testimony, as concocted; whereas, here the evidence of insanity came from an expert, and could not be said to be concocted because it was founded upon a recent past history of mental illness. Nonetheless, we believe that *Thompson* applies where expert testimony was the principal evidence of insanity and it appears that the validity of the expert's opinion is questionable in light of facts of record.

Applying the *Thompson* analysis to the instant case, we have examined the record to determine if it amply supports the trial judge's decision to discount the testimony of Dr. Berman. We note first that Dr. Berman did not attend appellant near the time of the incident, rather in reaching his conclusions he relied upon reports detailing appellant's past history of manic-depressive psychosis and appellant's medical records following the incident, and an interview with appellant and others some seven months after the incident. With this information Dr. Berman was able to render an opinion with a strong degree of medical certainty that appellant was unable to know the nature and quality of his actions or know that they were wrong. Dr. Berman testified that appellant believed that the police were sent after him by demons. It appears that Dr. Berman believed that appellant's delusion was so prevalent in his thinking that it prevented him from regarding the crowd of people who were in front of him, prior to the incident, as a real

obstacle to his forward progress. However, during cross-examination Dr. Berman was unable to explain why appellant would be deluded as to the probable consequences of his act of driving into a crowd of people, and seemingly not have the same lack of appreciation of the nature and quality of his actions when shortly before the incident, he drove his vehicle along a busy street with the police directly behind him in pursuit, without striking another vehicle or person. He could not say why appellant could believe that the crowd of people before him were not real and, apparently believe, the automobiles that also impeded his progress for almost a half mile were real enough that he did not drive his vehicle into one of them. N.T., Volume II at 99. Other portions of the record support the conclusion that appellant knew the consequences of driving his vehicle into another object, be it human or an automobile. N.T., Volume II at 39–43. The record of Dr. Berman's cross-examination further indicates that appellant told Dr. Berman that shortly before the incident, when the police initially attempted to stop him, he knew he had not done anything wrong. N.T. Volume II at 83 and 96. This statement indicates that appellant had the capacity to differentiate between right and wrong only a short time before the incident. Dr. Berman believed that if appellant did have such a capacity, he was unable to use it. We find that these aspects of Dr. Berman's testimony severely undermined his conclusion that appellant did not know the nature and quality of his actions and that he was not able to differentiate between right and wrong.

As the arbiter of both the law and the facts, Judge DiBona was at liberty to reject the expert opinion of Dr. Berman as insufficient to raise the issue of insanity for it, like any other evidence, is for the trier of fact to consider and to determine what weight, if any, it could be given. *See Commonwealth v. Hicks,* 483 Pa. 305, 396 A.2d 1183 (1979). We are satisfied that an adequate basis existed in the record to permit the trial judge to discount Dr. Berman's opinion altogether, thus eliminating the only pertinent evidence of appellant's legal insanity. *See Common-*

*wealth v. Norman,* 259 Pa.Super. 301, 393 A.2d 837 (1978) (Opinion in Support of Affirmance by Cercone, P.J. joined by Price, J. and Van der Voort, J.)

■ Absent creditable evidence of appellant's legal insanity when the incident occurred, the issue of insanity had no substance. With the rejection of Dr. Berman's testimony, the Commonwealth had no burden of producing evidence that would convince the trial judge that appellant was sane beyond a reasonable doubt.

## II.

■ Appellant's second issue challenges the legality of the sentences imposed upon him below. Appellant contends that it was error for the trial judge to sentence him to consecutive one year terms of probation on each of nine counts of recklessly endangering another person, when all of these counts stem from a single unlawful act committed by appellant.[5] Our examination of the Pennsylvania case law leads us to conclude that only one sentence may be imposed upon appellant.

■ In *Commonwealth v. Walker,* 468 Pa. 323, 362 A.2d 227 (1976), our supreme court stated that the:

[A]nalysis of duplicitous sentence questions has traditionally revolved around the concept of injury to the sovereign, in this case the Commonwealth. One of the purposes of the criminal law is to punish offenses against the Commonwealth, as defined by the Legislature, and it follows that, '[t]he criminal prosecution is for the injury done to the Commonwealth, and not for the injury done to the individual who may, if entitled, obtain redress through a civil action. Where there is but one act of cause of injury, or death of a number of persons, there is

5. Appellant failed to file a motion for reconsideration of sentence. This failure does not result in the waiver of this sentencing issue, because it concerns the lawfulness of the sentence. *Commonwealth v. Walker,* supra, 468 Pa. at 330 n. 3, 362 A.2d at 230 n. 3; *see also Commonwealth v. DeCaro,* 298 Pa.Super. 32, 444 A.2d 160 (1982); *Commonwealth v. Walls,* 248 Pa.Super. 335, 375 A.2d 125 (1977) *aff'd,* 481 Pa. 1, 391 A.2d 1064 (1978).

but one injury to the Commonwealth, but where the acts or causes are separate, they are separate injuries to the peace and dignity of the Commonwealth...'

*Id.* 468 Pa. at 331, 362 A.2d at 231 (citations omitted). When there has been a single injury to the "peace and dignity of the Commonwealth," it is beyond the power of a sentencing court to impose multiple sentences upon a defendant. *Commonwealth v. Walker, supra; Commonwealth v. Reynolds,* 256 Pa.Super. 259, 389 A.2d 1113 (1978); *Commonwealth v. Speelman,* 235 Pa.Super. 109, 341 A.2d 138 (1975); *Commonwealth ex rel. Brockway v. Keenan,* 180 Pa.Super. 78, 118 A.2d 255 (1955). *See also Commonwealth v. Crocker,* 280 Pa.Super. 470, 421 A.2d 818 (1980); *Commonwealth v. Lezinsky,* 264 Pa.Super. 476, 400 A.2d 184 (1979).

We have determined from the record that the nine counts of recklessly endangering another person lodged against appellant were founded on a single unlawful act committed by appellant. The record reveals that appellant propelled his vehicle forward through a crowd of persons causing injury to numerous persons simultaneously. While this single action of appellant may constitute more than one criminal cause of action for recklessly endangering another person, it may still support but one sentence. *See Commonwealth v. Cox,* 209 Pa.Super. 457, 228 A.2d 30 (1967). *See also Commonwealth v. Speelman, supra.* Accordingly, we will vacate the sentences imposed upon appellant for all counts of recklessly endangering another person.

Since we are uncertain whether the trial judge might have sentenced appellant differently had he known that the consecutive probations imposed were illegal, we will remand for resentencing in order to permit the trial judge an opportunity to reconsider sentencing. *Commonwealth v. Lezinsky, supra.* So ordered. Jurisdiction is relinquished.

POPOVICH, J., files a concurring and dissenting opinion.

POPOVICH, Judge, concurring and dissenting:

According to the majority's logic, a drunk driver who crashes into a school bus and kills several children can be sentenced for only one count of involuntary manslaughter,[1] the sentence not to exceed five years imprisonment and a $10,000 fine[2]. Does this punishment fit the crime? Routinely and perfunctorily reiterating an ancient legal cliche, the majority maintains that the defendant cannot be sentenced on the remaining counts because all of the deaths are the result of a "single unlawful act."

Although the facts of the instant case are, fortunately, not as severe as the above hypothetical, the same rule is applicable in either situation. In the instant case, appellant, prior to engaging in a high speed chase with the police, "propelled his vehicle forward, through a crowd of people in the street waiting for a trolley. Several persons suffered injury." The majority, in remanding so that sentence can be imposed on only one of the nine counts of recklessly endangering, is blindly adhering to the prior decisions of this Court which prohibit multiple sentences in automobile accident cases. When our Court has bothered to offer a reason for this rule, we invariably cite a line of cases which state that the single act theory has "long been the law of this Commonwealth." Because no logical reason exists to support the continued viability of the single-act doctrine in cases such as this one, I must vehemently dissent.

The rule takes its roots from two cases having nothing to do with the legal issues presented in automobile injury cases. In *Commonwealth v. Veley*, 63 Pa.Super. 489 (1916), three people drowned when a dam broke. The president of the company which owned and constructed the dam was brought to trial on two counts of involuntary manslaughter. The Commonwealth alleged that the defendant's negligence in the construction and maintenance of the dam caused the drownings. The defendant was acquitted

1. 18 Pa.C.S.A. § 2504.

2. *See* 18 Pa.C.S.A. §§ 1101, 1104; 42 Pa.C.S.A. § 9726(b).

by a jury. Two years later, another involuntary manslaughter charge was brought against the same defendant for the death of the third drowning victim. Finding that the defendant was to be tried for an offense arising out of the same set of circumstances of which he was acquitted, this Court stated:

"Where there is but one act of cause of injury, or death of a number of persons, there is but one injury to the Commonwealth, but where the acts or causes are separate, they are separate injuries to the peace and dignity of the Commonwealth.

The protection afforded by the fifth amendment of the Constitution of the United State [sic], that a person shall not be twice placed in jeopardy for the same offense, is not only to protect against the peril of a second punishment, but is well against being tried a second time for the same offense: *Kepner v. United States,* 195 U.S. 100 [24 S.Ct. 797] 49 L.Ed. 114."

*Veley, supra,* 63 Pa.Superior Ct. at 496.

The first sentence of the above quote is preserved by the majority in the instant case in its quote from *Commonwealth v. Walker,* 468 Pa. 323, 362 A.2d 227 (1976). This single-injury-to-the-Commonwealth language was initially produced in *Commonwealth v. Ernesto,* 93 Pa.Super. 339 (1928), where five defendants were each charged with seven counts of involuntary manslaughter after a still they were operating, in violation of the liquor laws of the time, exploded and ignited a fire destroying the home of one of the defendants and killing his wife and six children. All of the defendants were found guilty and each received five consecutive two-year sentences of imprisonment and two concurrent sentences of two years imprisonment. This Court held that the trial court erred in sentencing each defendant to a total of ten years incarceration. We found that the only difference between *Commonwealth v. Veley, supra,* and the case at bar was that the deaths in *Veley* were alleged to have occurred from the doing of a lawful act in a negligent manner and that in *Ernesto,* the deaths occurred from the

doing of an unlawful act. *Ernesto, supra,* 93 Pa.Superior Ct. at 347. The *Ernesto* court reasoned:

"The same unlawful act which caused the death of any one of the persons mentioned in the indictment caused the deaths of the others. There was but one injury to the Commonwealth involved in this prosecution and that [sic] neither a malicious nor an intentional one insofar as its unfortunate results are concerned."

*Id.,* 93 Pa.Superior Ct. at 348.

Accordingly, the case was remanded to the lower court for resentencing so that a sentence no more severe than that authorized for a single act could be imposed.

The first time a drunk driver benefited from the single-act theory was in *Commonwealth v. McCord,* 116 Pa.Super. 480, 176 A. 834 (1935). Defendant McCord was found guilty of assault and battery, aggravated assault and battery, operating a vehicle on the public highways while under the influence of intoxicating liquor, violation of the Motor Code in failing to stop at the scene of an accident, and involuntary manslaughter. The facts indicated that an automobile, driven by either Mr. McCord or defendant Waggy, struck three young women, killing one, and injuring the other two. McCord was sentenced on all counts except simple assault and battery. This Court, relying on *Commonwealth v. Veley, supra,* and *Commonwealth v. Ernesto, supra,* ruled that the trial court had no power to impose sentence for both involuntary manslaughter and aggravated assault and battery from the single act of running into three people. The sentence imposed on the latter count was reversed.

Over the years, it has been consistently held that the courts of this Commonwealth have no power to impose more than one sentence for a single unlawful act. This single-act theory has been used in cases where multiple crimes are committed by a single act, *Commonwealth v. Walker,* 468 Pa. 323, 362 A.2d 227 (1976); *Commonwealth v. Crocker,* 280 Pa.Super. 470, 421 A.2d 818 (1980); *Commonwealth v. Lezinsky,* 264 Pa.Super. 476, 400 A.2d 184

(1979), and where multiple victims are the result of a single act, *Commonwealth v. Reynolds,* 256 Pa.Super. 259, 389 A.2d 1113 (1978); *Commonwealth v. Speelman,* 235 Pa.Super. 109, 341 A.2d 138 (1975); and *Commonwealth ex rel. Brockway v. Keenan,* 180 Pa.Super. 78, 118 A.2d 255 (1955). The latter group of cases, involving multiple victims, most commonly involve auto accidents caused by intoxicated or reckless drivers. As stated previously, the primary reason given for the rule in these cases, which invariably cite *McCord, supra,* is that such a rule has long been the law of Pennsylvania. However, in *Commonwealth v. Reynolds, supra,* in response to the Commonwealth's argument that the enactment of the Crimes Code dictated a new result, it was held that, aside from the fact that Pennsylvania case law in this area is well settled, if the legislature had desired to change the law it would have specifically done so. *Id.* 256 Pa.Super. at 279–80, 389 A.2d at 1123 (*citing Commonwealth v. Miller,* 469 Pa. 24, 364 A.2d 886 (1976)). This writer finds that the *Reynolds* court's reliance on *Miller, supra,* was misplaced. In *Miller,* our Supreme Court held that the legislature, in adopting the Crimes Code, did not intend for the crime of criminal conspiracy to merge with the completed offense which was the object of the conspiracy. The Court reasoned that since the Crimes Code, which was based on the Model Penal Code, did not contain specific provisions mandating such a merger, our legislature did not intend to change the common law rule. Furthermore, the *Miller* court found that where the legislature intended to preclude multiple prosecutions and convictions, it manifested this intention clearly and precisely. *Miller, supra* 469 Pa. at 26–29, 364 A.2d at 887, 888.

The *Reynolds* court held that the legislature did not intend to change the common law single-act doctrine when enacting the Crimes Code because it remained silent on the subject. I find it totally illogical to premise such a decision on the *Miller* case, which holds that where the legislature has intended to preclude multiple prosecutions and convic-

tions, it has done so clearly and precisely.[3] Nowhere in the Crimes Code has the legislature precluded multiple sentences for multiple violations of a criminal statute when a single act injures more than one person.

> "Although a rule of law may have emerged from a case, that does not foreclose its subsequent scrutiny by the Courts in ascertaining whether it is still jurisprudentially sound. Since the law is a 'living and developing legal system ... rather than ... a static set of rules,' *Estate of Grossman*, 486 Pa. 460, 470, 406 A.2d 726, 729 (1979), the policy of *stare decisis* is not to be adhered to with such blind obedience that one's constitutional rights, e.g., to a speedy trial, are impinged. The better practice would be to examine the continuing viability of our decisions where the need so requires." (emphasis supplied).

*Commonwealth v. Daniels*, 288 Pa.Super. 69, 76–77 n. *, 431 A.2d 291, 295 n. * (1981) (Popovich, J., dissenting).

The constitutional right protected by this Court in *Veley, supra*, was the clause of the Fifth Amendment which states, "[n]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb ...." U.S. Const., Amend V. The *Ernesto* court erred in relying on *Veley, supra*, when it held that the explosion of an illegal still which leaves seven people dead gives rise to only one punishment. *Veley* stands only for the proposition that after an acquittal, one cannot be tried again on the same facts for the same offense. "[T]here is no constitutional prohibition against legislation which provides for multiple crimes arising from single acts against multiple victims. *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); *People v. Golson*, 32 Ill.2d 398, 207

---

**3.** On this point, the *Miller* decision cites 18 Pa.C.S.A. § 906, which provides: "A person may not be convicted of more than one offense defined by this chapter [inchoate crimes] for conduct designed to commit or to culminate in the commission of the same crime," and 18 Pa.C.S.A. § 3502, which provides: "(d) Multiple convictions.—A person may not be convicted both for burglary and for the offense which it was his intent to commit after the burglar's entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree."

N.E.2d 68 (1965)." *State v. Miranda,* 3 Ariz.App. 550, 416 P.2d 444, 451 (1966). This Court, in a case such as the present case, is no longer protecting a defendant's constitutional right not to be tried twice for the same offense. Rather, we are protecting intoxicated and reckless drivers from the obvious consequences of their actions.

I would adopt the more logical approach taken by the State of Arizona, which allows consecutive sentences on multiple involuntary manslaughter charges arising from a single motor vehicle accident. In *State v. Miranda, supra,* the court interpreted the applicable Arizona statutes:

"The statute under which the defendant was prosecuted is in Ch. 2 of our Criminal Code (Title 13 A.R.S.) which is the chapter on homicide. A.R.S. § 13–156, subsec. A, in pertinent parts, reads as follows:

'Manslaughter is of three kinds:

\* \* \* \* \* \*

'3. In the driving of a vehicle:

'(a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act which might produce death in an unlawful manner, and with gross negligence.'

This section is not intelligible unless the prior section is read also:

'§ 13–455. Manslaughter defined.

'Manslaughter is the unlawful killing of a human being without malice.'

This language makes sufficiently clear, in the opinion of this court, that the legislature intended that the killing of each human being, under the circumstances described in the code, would constitute a separate offense. Respect for human dignity is of the essence of our way of life. Certainly it is in keeping with this spirit that the wrongful killing of each human being should be treated as a separate offense."

*State v. Miranda, supra* 416 P.2d at 451, 452. A contrary result was reached by the Alaska Supreme Court in *Thessen v. State of Alaska,* 508 P.2d 1192 (Alaska 1973), where the defendant was found guilty of 14 counts of manslaughter for one act of arson and only one sentence could be imposed. The *Thessen* court found that since the defendant did not intend for anyone to be killed in the fire he set, the focus of punishment "must be on the intent and conduct of the perpetrator rather than on fortuitous results." *Id.* at 1197. The courts of this Commonwealth should not be persuaded by such reasoning in cases where a driver recklessly propels his car into a crowd of people or where an intoxicated driver crashes into a school bus. The results of these automobile "accidents" are not fortuitous.

The Pennsylvania statute which defines involuntary manslaughter provides:

"(a) **General rule.**—A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."

18 Pa.C.S.A. § 2504.

This statute is invoked when one engages in the conduct proscribed and thereby "causes the death of another person." Had the legislature intended the single-act theory to be included in the statute, the final phrase would read: "causes the death of one or more persons." Rather, a person is guilty of involuntary manslaughter when his unlawful or negligent conduct causes the death of one person. The Pennsylvania involuntary manslaughter statute clearly focuses on the individual victim just as, in the instant case, the recklessly endangering section of the Crimes Code is written. This section provides:

"§ 2705. **Recklessly endangering another person**

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may

place another person in danger of death or serious bodily injury."

18 Pa.C.S.A. § 2705.

As was held in *Commonwealth v. Miller, supra,* where the legislature has intended to preclude multiple prosecutions and convictions, it has expressly done so. It is clear, in the opinion of this writer, that the above statute is written with regard to an *individual* person being placed in danger of death or serious bodily injury, and that a separate offense is committed for each individual placed in such danger. If the legislature intended a different result, this statute would read: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place *a person or persons* in danger of death or serious bodily injury." It does violence to the plain meaning of these laws to hold that the legislature, by failing explicitly to overrule a relatively obscure line of cases, intended to incorporate the single-act doctrine into the involuntary manslaughter and recklessly endangering statutes. The fact that our Supreme Court quoted the multiple death language of *Veley, supra,* in *Commonwealth v. Walker, supra,* is irrelevant since that case involved different crimes, rape and statutory rape, from a single act against a single victim. The case law which has developed where two or more persons are injured or killed by a single criminal act in the operation of a motor vehicle is not based on sound legal principles and, therefore, must be changed. Appellant's sentence of nine consecutive one-year terms of probation should be affirmed.[4]

For the above-stated reasons, I dissent. I concur with the majority's disposition of the first issue raised by this appeal.

[4]. To the extent that concurrent sentences are not violative of the single act doctrine, see *Commonwealth v. Carroll,* 131 Pa.Super. 357, 200 A. 139 (1938). However, as the distinction between concurrent and consecutive sentences, with regard to the single act doctrine, is as unsound as a rule against consecutive sentences in these cases, I understand the total disregard of *Carroll* in *Commonwealth v. Speelman, supra,* and *Commonwealth v. Crocker, supra.*