Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* Rejean Nelson Morin, Appellee.

Argued February 4, 1977, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Harold H. Cramer,* Assistant Attorney General, with him *John L. Heaton,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellant.

*Timothy F. Nicholson,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., June 2, 1977:

The Department of Transportation, Bureau of Traffic Safety (PennDOT) appeals an order of the Court of Common Pleas of Dauphin County which

sustained the appeal of Rejean Nelson Morin (Appellee).

Appellee's difficulties began on November 29, 1974, when his flight across the Dauphin-Lebanon County Line resulted in his being charged in Lebanon County with failing to stop, Section 1027(a) of The Vehicle Code (Code), Act of April 29, 1959, P.L. 58, *as amended*, 75 P.S. §1027A, and his being charged with driving under the influence of alcohol in Dauphin County, Section 1037 of the Code, 75 P.S. §1037. He was convicted and sentenced in Dauphin County on January 30, 1975. He was adjudged guilty and sentenced for the Lebanon County offense on May 22, 1975.

PennDOT, through the Director of Traffic Safety's office, subsequently notified Appellee that his operating privileges were being revoked for one year effective January 30, 1975 as a result of the driving under the influence conviction.[1] Thereafter, Appellee was notified on October 29, 1975, that as a result of the sentence for failure to stop in Lebanon County, his privileges were being revoked for a period of one year effective January 30, 1976.

Appellee's appeal, sustained by the court below, was from the second order of PennDOT which hitched the additional one-year revocation to the revocation previously imposed.

We cannot agree with the court below, and the position taken by Appellee herein, that an individual convicted of more than one revocable offense, with each offense occurring in close proximity to the other, must have his privileges revoked *forthwith* upon conviction for the subsequent offense notwithstanding the fact

---

[1] Section 616 of the Code, 75 P.S. §616, mandates a one-year revocation for each of the offenses for which Appellee was found guilty. At this time of sentencing on the Dauphin County charge, January 30, 1975, Appellee voluntarily surrendered his operator's license to the court, thus the effective date of the order revoking privileges commenced on that date.

he is still undergoing a prior revocation. Thus, we reverse.

Section 616(a), 75 P.S. §6616(a), states in relevant part:

> (a) Upon receiving a certified record, from the clerk of the court, of proceedings in which a person pleaded guilty, entered a plea of nolo contendere, or was found guilty by a judge or jury, of any of the crimes enumerated in this section, the secretary *shall forthwith revoke,* for a period of one (1) year from the date of revocation, the operating privileges of any such person: Provided, however, That if such person is serving or has served a period of suspension for the same offense under the provisions of clause (1) of subsection (b) of section 618 of this act, he shall be credited with the suspension time served against the one (1) year revocation, and where such person was convicted, or entered a plea of guilty or nolo contendere, of any one of the crimes enumerated in this section, such operating privilege shall not be restored, unless and until the fine and costs imposed in such cases, have been fully paid. . . .

We have on two prior occasions faced situations bearing on the present case: first, in *Department of Transportation v. Hosek,* 3 Pa. Commonwealth Ct. 580, 284 A.2d 524 (1971), and second, in *Department of Transportation v. Thompson,* 17 Pa. Commonwealth Ct. 505, 333 A.2d 478 (1975). In each of those cases, we enunciated the proposition that unreasonable delay from the date of receipt of notice of conviction to the date of actual revocation was violative of the *forthwith provision* of Section 616 if the violation was unduly or unreasonably prejudicial.

In *Hosek,* we held that a 16-month delay between notice of conviction and revocation, together with

prejudice, violated Section 616, while in *Thompson*, we held that entry of a supersedeas had the effect of staying the revocation and that revocation within seven weeks of the expiration of the supersedeas was not such an undue delay as to violate the *forthwith provision* of the section.

Neither *Hosek* nor *Thompson*, however, specifically addressed the undue delay dilemma as it relates to the instant case.

PennDOT argues that acceptance of Appellee's contention that its failure to immediately revoke operating privileges, *i.e.*, by notifying Appellee on October 29, 1975, that a revocation will take effect on January 30, 1976, is in conflict with the clear meaning of Section 616, and the proper interpretation of the term *forthwith* as used in that section.

That an individual could commit two or more revocable offenses in a short space of time, be convicted and sentenced on different dates, thus causing certification to the Secretary on different dates, and expect that the civil penalties of revocation of necessity run *concurrently* rather than *consecutively*, is inapposite given the dictates of the statute.

Recognizing the deterrent effect of revocation as sanction for violations of the Code, it is incongruous that a multiple violator should, and could, expect a sanction equivalent to that imposed on a unitary violator. If this were so, there would exist little deterrent, if any, to those who are adjudged guilty of multiple violations of the Code.

The remaining question raised by *Hosek* and *Thompson* is the notification on October 29, 1975, of the revocation to become effective January 30, 1976. It is undisputed that the notice of revocation was "immediate" notwithstanding the delay in imposition of the revocation. If the interpretation of the court below of imposing the revocation immediately upon re-

ceipt of certification were adopted, numerous instances in our extraordinary traffic flow would arise wherein the additional period of revocation would partially merge into the period of prior revocation, thereby decreasing the time of multiple violators' revocations.

We must hold that in situations of multiple convictions and revocations arising under Section 616(a), time periods for revocation can be imposed consecutively, and that the term "shall forthwith revoke" in the section refers to *notification* of the subsequent revocation rather than to its *effective date.*

Undoubtedly, Appellee will be inconvenienced by the imposition of consecutive revocations; but that inconvenience in no way rises to the level of prejudice enunciated in *Hosek* and *Thompson.*

In light of the foregoing, the order of the court below is reversed.

ORDER

AND Now, this 2nd day of June, 1977, the order of the Court of Common Pleas of Dauphin County is reversed and the penalties imposed are reinstated.