## In Re: Meals Suspension

*Joseph P. Valentino,* for petitioner.
*Nancy J. Norkus,* for respondent.

FORNELLI, *J.,* July 18, 1985—On January 11, 1984, petitioner was convicted at no. 384 Criminal 1983 of two counts of homicide by vehicle, 75 Pa. C.S. §3732. The convictions were apparently based on evidence that petitioner's vehicle left the roadway and struck two bicyclists, killing them. On November 27, 1984, defendant was sentenced on these convictions.[1] The Clerk of Courts of Mercer County certified the convictions of the two counts of homicide by motor vehicle to the Department of Transportation on November 29, 1984.

On March 8, 1985 and March 14, 1985, petitioner was notified by the Department of Transportation that his operating privileges were revoked for two periods of one year consecutively as a result of the convictions effective April 12, 1985 and April 12, 1986.

Petitioner filed a timely appeal to this court challenging the propriety of imposing consecutive license revocations for what petitioner claims to be a single act which resulted in the multiple deaths.

---

1. No appeal was taken from the convictions or sentence by the defendant.

A single unlawful act affecting multiple victims may support multiple criminal sentences without violating the double jeopardy clause of the Fifth Amendment. Commonwealth v. Frisbie, 318 Pa. Super. 168, 464 A.2d 283 (1983). Defendant there propelled his vehicle through a crowd of persons causing numerous and almost simultaneous injuries. The Supreme Court held that defendant could be subject to multiple sentences for recklessly endangering another person.

While Frisbie deals with the issue of multiple punishments for criminal offenses, and this is a civil proceeding involving withdrawal of the privilege to operate a motor vehicle in this state, the reasoning of Frisbie is here applicable. The legislature by 75 Pa. C.S. §1532(a) provides for revocation of operating privileges and ties that revocation to a driver's conviction of certain named offenses.[2] Frisbie holds that where the legislature intends that each injury resultant from a single act is to constitute a separate offense, a separate sentence may be imposed for each injury. This legislative intent is to be determined from the wording of the statute establishing the offense. Frisbie held the legislature's defining of recklessing endangering as conduct endangering "another person," as opposed to "another person or persons," establishes a separate offense for each individual placed in danger.[3]

---

2. Defendant here was suspended under §1532(a)(3):

(a) Revocation—The department shall revoke the operating privilege of any driver for any one year upon receiving a certified record of the driver's conviction of any of the following offenses: . . . .

(3) Any violation of the following provisions: . . . §3732 (relating to homicide by vehicle).

3. The legislature has defined crimes so as to preclude greater than one punishment for multiple injuries resulting

Our issue turns then on the legislature's intention in defining the offense of homicide by vehicle created by §3732. of the Motor Vehicle Code:

"Any person who intentionally causes the death *of another person* while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or the regulation of traffic except §3731 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death." (Emphasis added.) 75 Pa. C.S. §3732.

As with the statute in Frisbie, the legislature defines the offense of homicide by vehicle in terms of conduct harming "another person." Therefore, under the rationale of Frisbie, the legislature intended to establish a separate offense for each person killed. Two persons were killed by petitioner's driving; and he was convicted of two counts of homicide by vehicle under §3732; and therefore, revocations for each violation are proper.

Our courts have sustained both a suspension of license for a conviction of driving under the influence and a revocation of license for conviction of homicide by vehicle, even though the convictions arose out of the same incident. Gilson v. Commonwealth, 75 Pa. Commw. 616, 462 A.2d 357 (1983). Similarly, multiple revocations were upheld for the convictions of involuntary manslaughter and driving under the influence, which offenses arose out of the same accident. Parks v. Commonwealth, 40 Pa.

---

from a single act. See, for example, 18 Pa. C.S. §2707 concerning the crime of propulsion of missiles into a vehicle occupied by "one or more persons."

Commw. 544, 398 A.2d 230 (1979); see also Commonwealth v. Morin, 30 Pa. Commw. 381, 373 A.2d 1170, 1172-73 (1977); Weaver v. Commonwealth, 52 Pa. Commw. 625, 416 A.2d 628, 630 (1980).

Petitioner asserts in his behalf §1535(b) of the Vehicle Code which provides:

"(b) Multiple Offenses from the Same Act.—If a driver is convicted of two or more offenses as a result of the same act, a point shall be assessed only for the offense for which the greatest number of points may be assessed."

This section is not, however, any support for petitioner's position. It is significant to this court that the legislature while enacting this restriction on the assessment of points, has not enacted a similar restriction on the imposition of suspensions or revocations. Moreover, Gilson v. Commonwealth, supra, at 358, has expressly held that §1535(b) has no applicability to suspensions or revocations imposed under §1532, 75 Pa. C.S. §1532.

Hence, this

### ORDER

And now, this July 18, 1985, petitioner's appeal is dismissed and the revocations of his operating license as imposed by the Department of Transportation are sustained.