505 A.2d 604

**COMMONWEALTH of Pennsylvania**

v.

**Tracy L. SHEFFY, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 19, 1985.

Filed Feb. 25, 1986.

John C. Tylwalk, Assistant Public Defender, Lebanon, for appellant.

John E. Feather, Jr., Assistant District Attorney, Lebanon, for Com., appellee.

Before WICKERSHAM, CIRILLO and JOHNSON, JJ.

WICKERSHAM, Judge:

Tracy L. Sheffy was tried before the Honorable G. Thomas Gates, President Judge, and a jury, in July 1983 and was found guilty of arson, damage to property, and arson, injury to person, and murder in the third degree.

On July 27, 1984, Judge Gates sentenced Tracy L. Sheffy to prison for a term of not less than 10 years nor more than 20 years. This direct appeal, in which appellant is represented by trial counsel, John C. Tylwalk, Esquire, brings the following issues before us:

    A. Did the trial court err in refusing to suppress Miss Sheffy's statement?

    B. Did the trial court err in refusing Miss Sheffy's request to sequester the jury?

    C. Was the verdict against the weight of the evidence?

    D. Did the trial court err in permitting testimony concerning a previous fire which occurred at 15–19 South Railroad Street, on December 9, 1982?

    E. Did the trial court err in permitting Thomas Brough to testify about acts and conduct of Tracy Sheffy which occurred prior to the fire on December 24, 1982?

    F. Did the trial court err in permitting testimony concerning various incidents that were reported to Palmyra Police by Tracy Sheffy prior to December 24, 1982?

Brief for Appellant at 27.

The Commonwealth filed a motion to modify sentence and took an appeal from the trial court's refusal to do so, and has filed a cross-appeal, with the following issue:

G. Did the sentencing court impose an unlawful sentence when it failed to impose a separate sentence for each of four (4) counts of third degree murder and two (2) counts of arson and instead imposed one sentence for all six (6) offenses by holding that all of the offenses merged for purposes of sentencing?

Brief for the Commonwealth at 2.

In his opinion dated July 3, 1984, Judge Gates reviewed the facts underlying this appeal. He said:

"The evidence adduced at trial discloses that around 3:30 a.m. on December 24, 1982, someone poured a flammable liquid on the brick floor of the foyer of the Palm Plaza Apartment Building situate[d] at 15–19 South Railroad Street in the Borough of Palmyra, Lebanon County, Pennsylvania, and set it on fire. The result was devastating; the building, which consisted of two floors, with four offices and one apartment on the first floor and seven apartments on the second floor, was completely destroyed. Four persons, Marlin Slaybaugh, Blanche Lingle, Ruth Ann Falco and John Falco, lost their lives as a result of smoke inhalation. They had been tenants of the second floor apartments. The defendant, an eighteen (18) year old single woman, was also a resident tenant of the building from October 9 of 1982. We can infer that she was aware that the building was occupied by other tenants and they were sleeping at the time the fire started.

"The investigating officers determined that the fire was of incendiary origin and began an investigation to determine the perpetrator. During the course of the search, the defendant became a suspect. It was discovered that she had an undifferentiated amorous relationship with a boyfriend named Thomas Brough. Toward the end of 1982 her relationship with Brough became strained and Brough was attempting to sever it. Brough was an ambulance aid with the Palmyra Fire Department. He resided at the fire station which was located about a block from the destroyed apartment building.

"Brough testified that on November 21, 1982 he and the defendant has a disagreement after which the defendant left the fire station. She returned to the fire station sometime later and told Brough that she had been attacked in the hallway of her apartment building by a man. Brough told her to call the police. Although claiming to have been attacked, the defendant did not think she could identify the individual and did not scream or holler, even though the attack allegedly occurred inside the apartment building where several other people were residing. Then, she claimed, she forced herself free, waited five minutes and ran to the fire station. A police investigation was fruitless.

"Brough disclosed another incident which occurred on or about November 27, 1982 when he and the defendant argued. Again she left the fire station. At about 2:30 a.m. she came to the fire hall, aroused Brough and related to him that someone had broken into her apartment and tried to rape her. A subsequent police investigation failed to substantiate her allegations. Once more she could not identify the individual. Again she had not screamed. There were no signs of a struggle in the apartment and no signs of forced entry even though her doors were supposedly locked. Her description of the attack and subsequent escape was remarkably similar to the prior one and equally implausible.

"Brough related that on December 1, 1982, after he had dropped the defendant off at her apartment, she appeared at the fire station with a threatening note which she claimed to have found slipped under her door.

"On December 9, 1982 Brough and the defendant had another disagreement resulting in the defendant's leaving the fire station in anger. About midnight, Brough was dispatched to a fire call in the Palm Plaza Apartments. That fire was discovered in a small storage area opposite the defendant's apartment by a tenant of the building who noticed smoke as he entered the building about 11:00 p.m. The tenant ran[ ] to his apartment on the second floor, called the fire department and made about four or five trips up and down the steps with buckets of water. On his third

trip, he found the defendant also throwing water on the fire which they extinguished before the firemen arrived.

"On December 23, 1982 at or about 11:30 p.m. Brough revealed that he received another telephone call from the defendant. She wanted to talk to him and was insistent that he come to her apartment and talk to her. He countered that they could talk in the morning, at which point the defendant became rather angry and hung up. At 3:45 a.m. Brough was dispatched to the Palm Plaza Apartments to respond to the fatal fire call.

"By December 28, 1982, the Pennsylvania State Police Fire Marshalls had determined that the cause of the fire was incendiary. Due to the previous [attention]-getting police contacts, the defendant became a suspect and the Fire Marshalls sought to speak with her and Brough. Before the police were able to make contact with either, the defendant appeared at the Palmyra Police Station with her mother on the afternoon of December 28, 1982.

"The Fire Marshalls were summoned and the defendant agreed to speak to them. Before any questions were asked, she was advised of her *Miranda* rights and she acknowledged that she understood them. She related to the Fire Marshalls her knowledge of the events of the night of the fire. The Fire Marshalls thereafter asked her to go through it again and relate the episode starting earlier in the afternoon. To this version the defendant added the fact that she had gone to the front foyer and checked her mailbox. Also, at this point she became emotionally upset, started to cry and appeared to be in a distraught condition. The Marshalls then asked whether she would like to call somebody to be with her. They suggested calling her mother or her boyfriend Brough. She requested that Brough be called and asked to come down and bring cigarettes for her.

"When Brough arrived, the Marshalls advised him that the defendant was close to giving a confession. Brough spoke with her alone for about fifteen minutes. The Fire Marshalls went back into the interrogation room, reminded

the defendant of her rights after which the defendant admitted having put a match down inside the foyer entrance to the hallway against the wood paneling. It had been previously determined by the Marshalls that the point of origin of the fire was from six to eight inches from the spot she supposedly placed the match. She told the Marshalls that she set the fire, not to hurt anybody, but to get Brough's attention and to get him to come down to the apartment, knowing he would respond with the fire company, if not to her [entreaties]. Brough told the jury that after talking to the defendant for several minutes, she said 'something to the effect of yes, I set it.' She then began crying.

"Other witnesses testified that, once the fire was started, the defendant was seen running to a convenience store about a block from the apartment building. Her slippers were found in an alley. They were later analyzed and found to have kerosene on them.

"Another witness testified that about 7:00 a.m. on December 24, 1982, shortly after the deaths became known, he was interviewing the defendant who 'was really nervous, scared, I'd say and she was crying, more or less in a state of shock.' He testified that as he walked away, the defendant said, 'I killed them, I killed them, God killed them.'

"The Commonwealth established that a short time before the fire, the two entrances to the apartment building were locked. When the firemen first arrived at the scene all of the windows were down and in place. The rear door assembly was found to still be in a locked position after the fire. The reasonable inference from this testimony is that the person who started the fire had to have a key to the building. The defendant was one of the few people who had a key."

Lower ct.op. at 5–10.

In his erudite opinion for the court *en banc* the learned President Judge properly and adequately answers those issues on appeal, including issue A (Suppression), issue B (Sequestration), issue D,E,F (Various areas of evidence al-

lowed by the trial judge). We have examined the Record, briefs of counsel and applicable law. We have independently examined the issues presented by appellant, including issue C (Sufficiency of the evidence) and find them all to be without merit.

We have also examined the issue raised by the Commonwealth. In its brief, the Commonwealth argues that:

On July 27, 1984 the defendant was sentenced, regarding four (4) counts of third degree murder and two (2) counts of arson (one based upon endangering persons, 18 Pa.C.S.A. § 3301(a) and one based upon endangering property, 18 Pa.C.S.A. § 3301(c)). At the time of sentencing the Commonwealth requested the sentencing court to impose a separate sentence for each count of third degree murder and for the arson endangering person count. (N.T. Sentencing 7/27/84 pp. 10–11) The sentencing court responded that the law in this Commonwealth restricted the court to imposing one sentence. (N.T. Sentencing 7/27/84 pp. 11 and 15)

When the Commonwealth requested separate sentences, it was aware of the panel decision of the Pennsylvania Superior Court in *Commonwealth v. Frisbie*, 318 Pa.Super. 168, 464 A.2d 1283 (1983). The sentencing court indicated that it felt the Superior Court decision in *Frisbie, supra.* controlled the sentencing in the subject case. It then proceeded to impose the single sentence.

On December 18, 1984 the Supreme Court of Pennsylvania filed an Opinion which reversed the decision of the Superior Court and held that a single unlawful act which affects multiple victims may support multiple sentences without violating the double jeopardy clause of the Fifth Amendment of the United States Constitution. *Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098 (1984). The Supreme Court not only reversed the Superior Court's decision in the Frisbie case, but also expressly overruled *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976) to the extent it was inconsistent with its decision in *Frisbie supra.* The Superior Court had relied

upon *Walker, supra.,* when it rendered its decision in the Frisbie case.

In the subject case the defendant started a fire, and as a result of that fire, four people died. Those four deaths were the bases for the four counts of criminal homicide that were listed as Counts II, III, IV, and V in the Information filed to Lebanon County Action No. 96, 1983. The *Frisbie* Supreme Court decision was based upon the legislative intent to define crimes and fix penalties. [*Frisbie, supra* at 318 Pa.Super. 465–66,] 485 A.2d at 1100. In *Frisbie* the charges were nine counts of recklessly endangering another person. (18 Pa.C.S.A. § 2705) Since the definition of "recklessly endangering another person" stated "another person" in the singular, the Supreme Court held that the Legislature intended a separate offense for each person who was a victim of that criminal conduct. [*Frisbie, supra,* 318 Pa.Superior Ct. at 465–66, 485 A.2d at 1100.

The same legislative intent would apply in the case of Criminal homicide. "Criminal homicide" (18 Pa.C.S.A. § 2501(a)) is defined,

A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of *another human being.*" (Emphasis ours)

The singular is used by the Legislature when it defined "Criminal homicide" as when it defined "Recklessly endangering another person." Thus, this case should be remanded to the sentencing court for the imposition of a separate sentence for each of the four counts of third degree murder.

The Commonwealth also submits that a separate sentence should have been imposed for the offense "arson endangering persons," 18 Pa.C.S.A. § 3301(a). In Lebanon County Action No. 96, 1983, Count I Arson, the defendant was charged as follows:

COUNT # I—ARSON, in that she feloniously, unlawfully and intentionally did start a fire or cause an explosion on the property of another person, to-wit, the

property of Edward Russek, located at 15–19 South Railroad Street, in the Borough of Palmyra, Lebanon County, Pennsylvania, and did recklessly place the lives of Betty Shepler, Donald Bankus, and Marlin Lehman, in danger of death or bodily injury, and also by starting this fire the defendant did cause the deaths of four (4) persons, namely, Blanch Lingle, Marlin Slaybaugh, John Falco, and Ruth Ann Falco, this being in violation of Section 3301(a) of the Crimes Code of Pennsylvania.

That Count included the allegation that by starting the fire she recklessly placed in danger of death or bodily injury the lives of Betty Shepler, Donald Bankus and Marlin Lehman, who survived the fire, as well as Blanch Lingle, Marlin Slaybaugh, John Falco and Ruth Ann Falco, who died in the fire. The latter four were persons listed in the four criminal homicide counts of the Information.

Since the arson endangering person count included victims other than those who died in the fire, a separate sentence is authorized under *Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098 (1984).

Brief for Commonwealth (appellee) at 24–27.

At sentencing on July 27, 1984 the Commonwealth requested the Court to impose a separate sentence for each of the four counts of third degree murder and for the two counts of arson. In its motion to modify sentence the same request was renewed. By Order of July 31, 1984 Judge Gates considered and refused such request. At the sentence hearing Judge Gates said, *inter alia:*

THE COURT: Sentence will be imposed in Count No. 2. In accordance with the law, the Court rules that all other counts are merged since they result in a single act. And the sentence of the Court is that you pay the costs. I am not ordering restitution since it's a judgment of the Court that you will never be able to pay it. That you be imprisoned in a state institution for an indefinite term, the minimum of which shall be ten years, and the maximum of which shall be 20 years, and stand committed in

the hands of the Sheriff until the sentence be complied with.

Transcript of Proceedings, dated July 27, 1984 at 15.

In *Commonwealth v. Frisbie,* 318 Pa.Super. 168, 178, 464 A.2d 1283, 1288 (1983) the trial judge had imposed ten consecutive one-year terms of probation on the defendant who had driven his car into an intersection injuring multiple pedestrians. We vacated the sentences, holding that defendant's "single action" could "support but one sentence." We were reversed in *Commonwealth v. Frisbie,* 506 Pa. 461, 485 A.2d 1098 (1984) decided December 18, 1984, five months *after* Judge Gates sentenced Tracy L. Sheffy.[1]

1. Justice Larsen, speaking for our supreme court, held that:

The issue presented by the case is whether a single unlawful act which affects multiple victims may support multiple sentences without violating the double jeopardy clause of the Fifth Amendment of the United States Constitution. We hold that it may.

\* \* \* \* \* \*

Whether the double jeopardy clause of the Fifth Amendment prohibits multiple sentences based upon a single unlawful act which affects multiple victims is an issue of first impression before this Court. The Superior Court, however, believed that its decision in the instant case was controlled by this Court's decision in *Commonwealth v. Walker,* 468 Pa. 323, 362 A.2d 227 (1976). In *Walker,* the defendant had been sentenced for both rape and statutory rape based on a single act of sexual intercourse. Since rape is, by definition, an act performed without the consent of the victim and statutory rape is by definition, an act performed with the consent of the victim, this Court held that it was possible for the defendant's conduct to have constituted but one of the two offenses for which he had been sentenced, i.e. rape, and therefore set aside the sentence for statutory rape. In that case, this Court did not face the issue of whether a single act which injures a number of people can be the basis for multiple sentences. This Court did state, however, that "[w]here there is but one act of cause of injury, or death of a number of persons, there is but one injury to the Commonwealth, ..." *Id.,* 468 Pa. at 331, 362 A.2d at 231, and that "it is beyond the power of a court imposing sentence to impose multiple sentences on a defendant for a single act." *Id.,* 468 Pa. at 330 n. 3, 362 A.2d at 230 n. 3. To the extent that the above-quoted language from *Walker* conflicts with our holding today, *Walker* is hereby expressly overruled.

\* \* \* \* \* \*

Therefore, we hold that the imposition of multiple sentences upon a defendant whose single unlawful act injures multiple victims is legislatively authorized and, consequently, does not violate the double jeopardy clause of the Fifth Amendment. Thus, the trial court

Accordingly Judge Gates *may*, but does not have to, desire to change his sentence.

In fairness to President Judge Gates we hereby Remand this case for further sentencing hearing. We affirm the judgment of sentence as originally imposed in all other respects and we relinquish jurisdiction.

Remanded for proceedings consistent with this opinion.

did not err in sentencing appellee to one term of probation for each of the nine victims injured by appellee's reckless act.

Accordingly, the order of the Superior Court is reversed, and the sentences imposed by the trial court are reinstated.

*Commonwealth v. Frisbie,* 506 Pa. 461, 463, 464–465, 467, 485 A.2d 1098, 1099–1101 (1984).