COMMONWEALTH of Pennsylvania,
Appellee,

v.

William Irving DAVIS a/k/a Bean Davis a/k/a William Irwin Davis a/k/a William Boo Davis, Appellant.

Superior Court of Pennsylvania.

Submitted March 6, 2000.
Filed Sept. 22, 2000.

Paul R. Dachille, Pittsburgh, for appellant.

Michael W. Streily and Sandra Preuhs, Asst. Dist. Attys., Pittsburgh, for Commonwealth, appellee.

BEFORE: JOYCE, LALLY–GREEN, and BROSKY, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, William Irving Davis, appeals from the order entered April 20, 1999, denying his first petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. We reverse and remand for resentencing.

¶ 2 The facts underlying Appellant's conviction were summarized by this Court on direct appeal as follows:

On October 16, 1984, Jobe Wright, Terrance George and Appellant drove through the Monroeville Mall parking lot in a red Chevrolet Camaro. George reached out of the car and snatched the purse of Marjorie Wilson. Appellant and his companions then exited the parking lot and proceeded along Route 22 west-bound towards Pittsburgh. After traveling approximately one-half mile, Appellant, who was driving, lost control of the vehicle and crossed over into the lanes of oncoming traffic. In the tragic collision which ensued, an elderly couple [ (Elmer and Sarah Burger) ] died. Terrance George also lost his life. Appellant fled the scene of the accident on foot. He turned himself in to police several days later.

Docket Entry 46 at 1–2; *Commonwealth v. Davis*, 388 Pa.Super. 224, 565 A.2d 458, 459 (1989), *appeal denied,* 525 Pa. 595, 575 A.2d 561 (1990).

¶ 3 On the date of the offense, October 16, 1984, a single auto accident caused by criminal behavior was considered one offense against the Commonwealth, exposing the defendant to only one penalty, regardless of the number of victims involved (the "one sentence rule"). *See, e.g., Commonwealth v. Frisbie*, 318 Pa.Super. 168, 464 A.2d 1283, 1288–1289 (1983) (*"Frisbie I "*).

¶ 4 On December 13, 1984, Appellant was charged by information as follows:

CC # 8411736 [1]—Robbery

    Criminal Conspiracy

    Theft by Unlawful Taking

CC # 8411789 [2]—Homicide (Elmer Burger)

    Homicide (Sarah Burger)

    Homicide by Vehicle (Terrance George)

    Homicide by Vehicle (Elmer Burger)

    Homicide by Vehicle (Sarah Burger)

CC # 8412440 [3]—Recklessly Endangering Another Person ("REAP")

    Receiving Stolen Property

    Careless Driving

    Driving at an Unsafe Speed

---

1. *See,* 18 Pa.C.S.A. §§ 3701(a)(1)(iv), 903(a)(1), and 3921(a).

2. *See,* 18 Pa.C.S.A. § 2501(a) (two counts) and 75 Pa.C.S.A. § 3732 (three counts).

3. *See,* 18 Pa.C.S.A. § 2705, 18 Pa.C.S.A. § 3925, 75 Pa.C.S.A. § 3714, and 75 Pa.C.S.A. § 3361.

¶ 5 On December 18, 1984, approximately two months after the incident in question, our Supreme Court reversed this Court's decision in *Frisbie I*. Specifically, the Court held that one criminal incident involving multiple victims could be considered more than one crime, carrying more than one penalty, depending on the language of the criminal statute at issue (the "multiple sentence rule"). *Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098, 1099–1100 (1984) ("*Frisbie II* ").[4]

¶ 6 Appellant's case proceeded to trial on October 22–29, 1985. On October 31, 1985, Appellant was convicted of all charges. Docket Entries 26–28. The homicide charges were graded as third degree murder. Docket Entry 27. On October 7, 1986, Appellant was sentenced to an aggregate prison term of 18¼ years to 36½ years.[5] Docket Entries 1–3.

¶ 7 At this point, we will briefly identify two aspects of the sentence that Appellant challenges herein. First, the sentence included a term of 7½ to 15 years for the murder of Elmer Burger, and a second consecutive term of 7½ to 15 years for the murder of Sarah Burger.[6] Docket Entry 1. Second, the sentence included two consecutive prison terms related to the death of victim Sarah Burger (the aforementioned 7½ to 15 years for third degree murder, and a consecutive term of 2½ to 5 years for homicide by vehicle).[7] *Id.*

¶ 8 On October 23, 1986, the sentencing court denied Appellant's Motion to Modify Sentence. Docket Entry 76; N.T., 10/23/86, at 35. This Court affirmed the judgment of sentence on October 16, 1989.[8] Docket Entry 46; *Davis*, 388 Pa.Super. 224, 565 A.2d 458. The Pennsylvania Supreme Court denied allowance of appeal on May 2, 1990. Docket Entry 46; *Davis*, 525 Pa. 595, 575 A.2d 561.

¶ 9 On February 12, 1996, Appellant filed a *pro se* PCRA petition. Docket Entry 52. A counseled, amended PCRA petition was filed on June 26, 1998. Docket Entries 58–60. The PCRA court dismissed Appellant's petition on April 20, 1999. Docket Entry 66. This appeal followed.

¶ 10 Appellant raises the following issues:

A. Are Appellant's sentences illegal because, under the sentencing law which prevailed at the time of the offenses, it was unlawful to impose multiple punishments for one vehicular act?

B. Are Appellant's sentences illegal because, under the sentencing law which prevailed at the time of the offenses, the Supreme Court re-

---

4. We recognize that courts generally use "I" and "II" to designate phases of a case that are separated by a **remand** or **retrial**. Here, for ease of reference we use "I" and "II" to designate the Superior Court and Supreme Court's opinions in *Frisbie*, even though that case did not involve a remand or retrial.

5. Appellant received the following sentences: (1) 7½ to 15 years for third degree murder (Elmer Burger); (2) a consecutive term of 7½ to 15 years for third degree murder (Sarah Burger); (3) a consecutive term of 2½ to 5 years for homicide by vehicle (Sarah Burger); and (4) a consecutive term of 9 to 18 months for robbery. Docket Entry 1. No further punishment was imposed on any other charges.

6. As noted further *infra,* these consecutive sentences are consistent with the multiple sentence rule announced in *Frisbie II,* but

would have been invalid under the one sentence rule set forth in *Frisbie I* and cases cited therein.

7. As noted further *infra,* Appellant argues that these sentences should have merged. For reasons that are unclear in the record, Appellant received no specific punishment related to the death of Terrance George.

8. Appellant raised the following issues on direct appeal: (1) the trial court should have suppressed Appellant's inculpatory statements; (2) the court should have severed Appellant's trial from that of his co-defendant; (3) the court erred by allowing the Commonwealth to introduce the unredacted statement of his codefendant; (4) sufficiency of the evidence with respect to the third degree murder convictions; and (5) prosecutorial misconduct. Docket Entry 46.

garded homicide by vehicle as a lesser included offense of third degree murder and, therefore, those offenses should have merged?

Appellant's Brief at 9.

¶ 11 Our review of a PCRA court's grant or denial of relief is limited to examining whether the court's determination is supported by the evidence and whether it is free of legal error. *Commonwealth v. Walker*, 721 A.2d 380, 381 (Pa.Super.1998). Under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that his claim falls within one of seven specific categories of error, including "[t]he imposition of a sentence greater than the lawful maximum." 42 Pa.C.S.A. § 9543(a)(2)(vii).

¶ 12 Both of Appellant's claims are cognizable under the PCRA because they involve allegations that the court imposed separate sentences on charges that should have merged. *Commonwealth v. Lehr*, 400 Pa.Super. 514, 583 A.2d 1234, 1236 (1990); *see also, Commonwealth v. Neupert*, 454 Pa.Super. 62, 684 A.2d 627, 628–629 (1996). Moreover, challenges to the legality of a sentence cannot be waived. *Commonwealth v. Hockenberry*, 455 Pa.Super. 626, 689 A.2d 283, 288 (1997), *appeal denied*, 548 Pa. 645, 695 A.2d 784 (1997). Accordingly, these issues are preserved even though Appellant did not raise them on direct appeal.

¶ 13 First, Appellant argues that the trial court violated his due process rights by sentencing him in accordance with the multiple sentence rule announced in *Frisbie II*. Specifically, he asserts that: (1) *Frisbie II* represented a new and unexpected change in the law; and (2) that retroactive application of *Frisbie II* exposed him to a greater prison term than he could have expected at the time of the offense. Appellant concludes that he should be resentenced under the one sentence rule which was in effect at the time of the offense.

¶ 14 Appellant's due process claim has its origins in the ex post facto clauses of the United States Constitution and the Pennsylvania Constitution. U.S. Const. Art. 1, § 10; Pa. Const. Art. 1, § 17.

¶ 15 The United States Constitution provides that "no State shall … pass any … ex post facto Law…." U.S. Const. Art. 1, § 10. The Pennsylvania Constitution provides that "no ex post facto law … shall be passed." Pa. Const. Art. 1, § 17. The Pennsylvania Constitution provides the same ex post facto protections as the United States Constitution. *Commonwealth v. Fisher*, 559 Pa. 558, 741 A.2d 1234, 1238 (1999). Because there is no appreciable difference between the two constitutional provisions or our Courts' analysis thereof, we will refer to them collectively as "the ex post facto clause".

¶ 16 Before we turn directly to the due process claim, we will briefly review relevant ex post facto principles. In 1798, the United States Supreme Court identified four types of prohibited ex post facto laws:

1st. Every law that makes an action done before passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. **Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.** 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798) (emphasis added). These four categories are still recognized today. *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); *Fisher*, 741 A.2d at 1238.

¶ 17 We recently set forth other relevant ex post facto principles as follows:

The bulk of our ex post facto jurisprudence has involved claims that a law has inflicted a "a greater punishment, than the law annexed to the crime, when committed." *Calder* [.] We have explained that such laws implicate the central concerns of the Ex Post Facto Clause: "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v. Graham*, 450 U.S. 24, 30, [101 S.Ct. 960, 67 L.Ed.2d 17][ ] (1981).

To fall within the ex post facto prohibition, a law must be retrospective—that is "it must apply to events occurring before its enactment"—and it "must disadvantage the offender affected by it" *id.*, at 29[, 741 A.2d 1234][,] by altering the definition of criminal conduct or increasing the punishment for the crime, *see Collins* [,] 497 U.S. [at 50][, 110 S.Ct. 2715].

*Commonwealth v. Kline*, 695 A.2d 872, 874 (Pa.Super.1997), *appeal denied*, 552 Pa. 694, 716 A.2d 1248 (1998).

¶ 18 Appellant's due process claim is not, strictly speaking, an *ex post facto* claim. That phrase is a term of art applying to statutes passed by legislatures. *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).

■■ ¶ 19 Some judicial enlargements of a criminal statute do, however, operate, like *ex post facto* laws. The United States Supreme Court has held that:

[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids.... [Thus], if a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

*Bouie v. City of Columbia*, 378 U.S. 347, 353, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *see also*, *Marks*, 430 U.S. at 192, 97 S.Ct. 990.[9] Summarizing, state courts may not unforeseeably and retroactively apply case law that increases the penalty for criminal conduct.[10]

■■ ¶ 20 We now turn to the question of whether *Frisbie II* was an unforeseeable change in the law. This issue raises two somewhat interrelated sub-issues: (1) change, and (2) foreseeability. Our standard of review is plenary. *Helton*, 930 F.2d at 1044.

¶ 21 The first issue is whether *Frisbie II* "changed" the law of *Frisbie I*. We begin with this Court's decision in *Frisbie I*, decided on August 12, 1983, slightly more than one year before the offense at issue. In *Frisbie I*, the defendant was convicted and sentenced on nine separate counts of

9. *Bouie* and *Marks* both concerned retroactive criminalization of innocent conduct, not retroactive increases in punishment. *See, Bouie*, 378 U.S. at 362, 84 S.Ct. 1697 (South Carolina Supreme Court unforeseeably and retroactively declared that **remaining** on private property without consent during a civil rights "sit in" constituted criminal trespass, but the trespass statute on its face applied only to illegal **entry** onto private property; at the time of the alleged offense, defendants had no notice that their conduct was criminal); *Marks*, 430 U.S. at 193–195, 97 S.Ct. 990 (federal courts could not retroactively apply new, stricter definition of obscenity to material that would not have been found obscene under the law in effect at the time the material was displayed).

10. A number of United States Courts of Appeals have squarely held that the Due Process Clause prohibits courts from retroactively applying case law that would increase punishment beyond what the defendant could have expected at the time of the offense. *See, Helton v. Fauver*, 930 F.2d 1040, 1045 (3rd Cir.1991); *Dale v. Haeberlin*, 878 F.2d 930, 934 (6th Cir.1989); *Davis v. Nebraska*, 958 F.2d 831, 833 (8th Cir.1992); *Devine v. New Mexico Dep't of Corrections*, 866 F.2d 339, 344–345 (10th Cir.1989). Our decision today is in accord with these authorities. *But see*, *United States v. Newman*, 203 F.3d 700, 702 (9th Cir.2000) (declining to extend *Bouie* and *Marks* to judicial retroactive increases in punishment).

REAP after he drove his vehicle through a crowd of people. *Frisbie I*, 464 A.2d at 1285. In deciding that the defendant should have been sentenced on only one count of REAP, this Court reasoned as follows:

¶ 22 In Commonwealth *v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976), our Supreme Court stated that the:

[A]nalysis of duplicitous sentence questions has traditionally revolved around the concept of injury to the sovereign, in this case the Commonwealth. One of the purposes of the criminal law is to punish offenses against the Commonwealth, as defined by the Legislature, and it follows that, '[t]he criminal prosecution is for the injury done to the Commonwealth, and not for the injury done to the individual who may, if entitled, obtain redress through a civil action. Where there is but one act of cause of injury, or death of a number of persons, there is but one injury to the Commonwealth, but where the acts or causes are separate, they are separate injuries to the peace and dignity of the Commonwealth ...'

*Id.* 468 Pa. at 331, 362 A.2d at 231 (citations omitted). When there has been a single injury to the "peace and dignity of the Commonwealth," it is beyond the power of a sentencing court to impose multiple sentences upon a defendant. *Commonwealth v. Walker, supra*; *Commonwealth v. Reynolds*, 256 Pa.Super. 259, 389 A.2d 1113 (1978); *Commonwealth v. Speelman*, 235 Pa.Super. 109, 341 A.2d 138 (1975); *Commonwealth ex rel. Brockway v. Keenan*, 180 Pa.Super. 78, 118 A.2d 255 (1955). *See also Commonwealth v. Crocker*, 280 Pa.Super. 470, 421 A.2d 818 (1980); *Commonwealth v. Lezinsky*, 264 Pa.Super. 476, 400 A.2d 184 (1979).

We have determined from the record that the nine counts of recklessly endangering another person lodged against appellant were founded on a single un-lawful act committed by appellant. The record reveals that Appellant propelled his vehicle forward through a crowd of persons causing injury to numerous persons simultaneously. While this single action of appellant may constitute more than one criminal cause of action for recklessly endangering another person, it may still support but one sentence. *See Commonwealth v. Cox*, 209 Pa.Super. 457, 228 A.2d 30 (1967). *See also Commonwealth v. Speelman, supra.* Accordingly, we will vacate the sentences imposed upon appellant for all counts of recklessly endangering another person.

*Id.* at 1288–1289, 464 A.2d 1283.

¶ 23 In *Speelman*, we noted that the one sentence rule had "long been the law". *Speelman*, 341 A.2d at 141, *citing, inter alia, Commonwealth v. Ernesto*, 93 Pa.Super. 339 (1928). Moreover, in *Reynolds*, we specifically rejected the proposition that the Crimes Code required courts to adopt the multiple sentence rule:

The courts have reasoned that if there is a single criminal act there is a single injury to the Commonwealth. Consequently, the courts of Pennsylvania have no power to impose more than one sentence on a single unlawful act. [*Speelman, supra*; *Cox, supra*; *Keenan, supra*; *McCord, supra*; *Ernesto, supra.*] The Commonwealth argues that the enactment of the Crimes Code dictates a different result. However, Pennsylvania law has been quite clear on this issue since 1928. If the legislature desired to change the law, it should have specifically done so. *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886 (1976). Because there has been no explicit change in this well-settled doctrine, we will continue to apply it.

*Reynolds*, 389 A.2d at 1123.

¶ 24 In *Frisbie II*, our Supreme Court reversed *Frisbie I* and announced the "multiple sentence" rule. In doing so, the Court adopted the argument which this

Court expressly rejected in *Reynolds*: namely, that the issue of multiple punishments should be resolved by reference to the language of the specific statute at issue. *Frisbie II*, 485 A.2d at 1100. In other words, if statute prohibits injury to "a person", then the defendant may be punished separately for each victim. *Id.* at 1100. On the other hand, if the statute prohibits injury to "one or more persons", then the defendant may be punished only once, regardless of the number of victims. *Id.*

¶ 25 In announcing this rule, the Court expressly overruled its own precedent in *Walker*, which described a criminal act as one offense against the Commonwealth. *Id.* at 1099. By implication, the Court also abrogated the long line of cases discussed in *Frisbie I, et al.*, which set forth the "one sentence" rule. Because *Frisbie II* overruled Supreme Court precedent and overturned a longstanding principle of law in favor of a new rationale, we conclude that *Frisbie II* represented a change in the law.

¶ 26 We must now decide whether the new rule was foreseeable. "The test for determining whether the retroactive application of a judicial decision violates due process is essentially one of foreseeability." *Johnson v. Kindt*, 158 F.3d 1060, 1063 (10th Cir.1998), *cert. denied*, 525 U.S. 1075, 119 S.Ct. 811, 142 L.Ed.2d 671 (1999). The critical issue is what the defendant could have anticipated on the date of the offense. *Weaver*, 450 U.S. at 30–31, 101 S.Ct. 960. The Tenth Circuit Court of Appeals recently suggested the following guidelines for determining whether a new decision is unforeseeable:

> A judicial construction of a statute is unforeseeable if it is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue." *Bouie*, 378 U.S. at 354[, 84 S.Ct. 1697]. Unforeseeable judicial decisions include expansion of a statute narrow and precise on its face

beyond those terms, **the overruling of precedent**, *Devine*, 866 F.2d at 345; or when "an in-depth inquiry by a dedicated and educated student of the relevant law would have revealed nothing to foreshadow the controlling court opinion." *Id.*

*Johnson*, 158 F.3d at 1063 (citation omitted).

¶ 27 As noted above, in announcing *Frisbie II*, the Court overruled its own precedent and abrogated a line of cases extending back as far as 1928. Moreover, we have discovered no Supreme Court case which predicted, anticipated, or foreshadowed such action. In short, at the time of the offense, Appellant could have reasonably expected to be sentenced under the longstanding rule announced in *Frisbie I*. For these reasons, we conclude that *Frisbie II* was unforeseeable.

¶ 28 Finally, the record reveals that by applying the "multiple sentence" rule, the trial court prejudiced Appellant by imposing a greater sentence than could have imposed under the prior law. For all of these reasons, we conclude that the Appellant's sentence violated due process. We are constrained to remand for resentencing.

¶ 29 The Commonwealth raises three counterarguments to Appellant's due process claim. First, the Commonwealth argues that *Frisbie II* did not announce new law because, at the time of the offense, the Crimes Code allowed for application of the "multiple sentence" rule. Commonwealth's Brief at 15. In other words, *Frisbie II* simply clarified that courts should look to the language of the existing Crimes Code when determining whether multiple injuries warrant multiple punishments. *Id.* at 16. We are not persuaded by this argument. For the reasons set forth above, we conclude that *Frisbie II* represented a clear break from past precedent and not a clarification of existing law.[11]

---

11. At best, the Commonwealth has established that a rational, principled basis existed

in the Crimes Code and in principles of statutory construction for adopting the multiple

¶ 30 Second, the Commonwealth suggests that *Frisbie II* should be applied retroactively to Appellant because *Frisbie II* did not specifically declare that the new rule should be applied prospectively. Commonwealth's Brief at 16, citing *Commonwealth v. Tizer*, 454 Pa.Super. 1, 684 A.2d 597, 601 (1996) ("unless [a new court decision] specifically declares the ruling to be prospective only, the new rule is to applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal."). While we recognize this general rule, we cannot apply *Frisbie II* retroactively because doing so would result in a due process violation.

¶ 31 Third, the Commonwealth argues that it is untenable to find a due process violation in this case because doing so would call into question the cases of *Commonwealth v. Zaengle*, 332 Pa.Super. 137, 480 A.2d 1224 (1984); *Commonwealth v. Sheffy*, 351 Pa.Super. 211, 505 A.2d 604 (1986), *cert. denied*, 479 U.S. 1097, 107 S.Ct. 1319, 94 L.Ed.2d 172 (1987); and *Commonwealth v. Yates*, 386 Pa.Super. 282, 562 A.2d 908 (1989). We will briefly outline the procedural history of each case.

¶ 32 In *Zaengle*, the trial court imposed multiple sentences arising out of an auto accident which resulted in the death of three people. *Zaengle*, 480 A.2d at 1225–1226. As in the instant case, the crime took place when the "one sentence" rule was still in effect. *Id.* at 1225. On August 10, 1984, this Court vacated the sentences and remanded for resentencing pursuant to the "one sentence" rule. *Id.* at 1227–1228. Two months later, our Supreme Court issued *Frisbie II*. Our Supreme Court then remanded the *Zaengle* case for proceedings consistent with *Frisbie II*. *Zaengle*, 345 Pa.Super. 124, 497 A.2d 1335, 1336 (1985). On remand, this Court reinstated the multiple sentences originally imposed by the trial court. *Id.* No due process concerns were identified with this action.

¶ 33 In *Sheffy*, the trial court applied the "one sentence" rule to a defendant who had killed four victims in an arson. *Sheffy*, 505 A.2d at 609. The "one sentence" rule was in effect at the time of the crime. *Id.* Five months after sentencing, our Supreme Court issued *Frisbie II*. After noting that our Supreme Court had changed the law in this area, we invited the trial court to consider resentencing *Sheffy* in accordance with *Frisbie II. Id.* at 609–610. Again, no due process concerns were identified.

¶ 34 In *Yates*, the trial court imposed multiple sentences to a defendant who had injured two victims with a single shotgun blast. *Yates*, 562 A.2d at 909. The "one sentence" rule was in effect at the time of the crime. *Id.* On appeal, this Court rejected the defendant's argument that the "one sentence" rule should apply. *Id.* at 909–910, citing *Frisbie II*, 485 A.2d at 1100.

¶ 35 The Commonwealth suggests that finding a due process violation in the instant case would be inconsistent with the outcomes of *Zaengle*, *Sheffy*, and *Yates*. We disagree. So far as can be discerned from those opinions, the defendants failed to identify and raise any due process concerns arising out of the retroactive application of *Frisbie II*. Because the due process issue raised here was not raised in *Zaengle*, *Sheffy*, or *Yates*, those cases do not control the instant case or compel a different result.

¶ 36 We now briefly turn to Appellant's second issue on appeal: that Appellant's sentence for homicide by vehicle with respect to victim Sarah Burger should have merged with his sentence for third degree murder with respect to the same victim.

---

sentence rule. The issue is not, however, whether the new rule is defensible; the issue is whether Appellant could have foreseen a change in the law at the time of the offense.

Because our Courts provided no indication that they would **in fact** adopt the new rule, we must conclude that *Frisbie II* was unforeseeable.

¶ 37 At the time of Appellant's offense, homicide by vehicle merged with involuntary manslaughter for sentencing purposes. *Commonwealth v. Houtz*, 496 Pa. 345, 437 A.2d 385, 386–387 (1981); *see also, Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593, 599 (1998). Moreover, our Courts have held that involuntary manslaughter is a lesser included offense of third degree murder. *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189, 1193 (1977); *In Interest of Smith*, 396 Pa.Super. 624, 579 A.2d 889, 896 (1990); *appeal denied,* 527 Pa. 610, 590 A.2d 296 (1991). Appellant argues that homicide by vehicle must, therefore, necessarily merge with third degree murder under the facts of this case. The Commonwealth does not seriously contest this position,[12] and we agree with Appellant's argument. We therefore vacate Appellant's sentences with respect to Sarah Burger, and remand for resentencing.

¶ 38 Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

¶ 39 BROSKY, J., files a Concurring Opinion.

BROSKY, J., concurring.

¶ 1 The majority's analysis is a logically flawless and "fair" application of legal principle to the present actual scenario. From a legal perspective, this is indeed admirable in light of the result, which would likely seem to many to be an undesirable one. Moreover, the *ex post facto* doctrine, and its cousin here, retroactivity of judicial decisions, is not a conceptually easy doctrine, as the many cases that have struggled to apply it seemingly attest. The majority has performed their legal duty with competent aplomb, thus I join the decision. However, I write separately to question, rhetorically, whether the prin- ciples in question should apply to the present scenario.

¶ 2 The majority rightfully notes that, in actuality, the present case is not a true *ex post facto* case, but a due process notice case that has its origin in *ex post facto* doctrine. The *ex post facto* clause is basically directed at governmental/legislative lawmaking. In the present case, the controversy relates to application of precedent that overruled prior precedent. Thus, in effect, *Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098 (1984), found that the law had been previously applied incorrectly. As stated in *Dale v. Haeberlin*, 878 F.2d 930, 934 (6th Cir., 1989), the controlling question is "whether the due process prohibition of judicially created *ex post facto*-type re-interpretations of the law also extends to judicial actions that affect the anticipated punishment for admittedly criminal conduct." The Sixth Circuit, while deciding the question in the affirmative, noted that the United States Supreme Court had not answered this question, and it does not appear that the High Court has since answered this question. Consequently, and technically speaking, we are not bound by the Sixth Circuit's holding and could depart from it and find that the imposition of multiple sentences in the present case did not violate due process concerns.

¶ 3 However, from an analytical perspective, the *Dale* court's holding seems to be a sound and faithful extension of the United States Supreme Court's decision in *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) and *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990 (1977). Thus, the more analytically sound approach is to follow the above precedent and allow the result reached here. My only hesitation comes from the fact that a case like the present one simply does not implicate the underlying concerns that the

---

**12.** The Commonwealth suggests that the trial court's double sentence with respect to Sarah Burger may have been an inadvertent mistake, particularly given that Appellant re- ceived no sentence related to the death of Terrance George. Commonwealth's Brief at 24 n. 5.

*ex post facto* doctrine was meant to address; thus the necessity for the doctrine is clearly debatable in this context.

¶ 4 As the majority indicates, the *ex post facto* prohibition operates to prevent retroactive criminalization of previously legal conduct as well as retroactive increases in punishment. That is, although free to pass law making certain conduct unlawful, the government is unable to prosecute, under the new law, conduct that was legal when it took place. Similarly, while free to increase the penalty for criminal conduct, the government cannot impose the greater penalty to criminal conduct that had taken place prior to the change. Since Appellant's conduct was unlawful when it occurred, the first concern is not implicated here; however, the second concern is.

¶ 5 Historical commentary, as well as decisional rationale, indicates that the primary concern behind the retroactive increasing of a criminal penalty is essentially the same as retroactive criminalization of conduct—the prevention of unfair persecution and adherence to fundamental concepts of fairness, i.e., notice. Like the retroactive criminalization of previously legal conduct, the substantial increase of criminal penalty for admittedly criminal conduct implicated similar possibilities of abuse. The concern in the retroactive criminalization of previously legal conduct is that a governing body/legislature, perhaps in response to public outcry, concern or dislike, might take vindictive and severe action against certain conduct, and possibly, in the process, target a certain group of individuals.[13] The same result could be achieved if the penalty for the conduct

were substantially increased and applied retroactively.

¶ 6 While the above concern is valid, the more basic notion underlying the *ex post facto* prohibition is fundamental fairness, which is directly tied to notice. A fundamental sense of fairness commands that people should not be punished for conduct that was not proscribed when committed, and which they could not have known might soon be proscribed. This fundamental notice concept serves two separate underlying interests—the opportunity or right of an individual to choose to conform one's conduct to the legal code of society and, perhaps conversely, the opportunity (or right?) to weigh whether to risk transgression of society's law at a known cost.[14] Few would have difficulty with the first interest. People should be alerted to conduct that is unlawful so that they can behave accordingly and avert any unpleasant consequences. However, the second interest is not without certain controversy.

¶ 7 On the one hand, fundamental fairness would seemingly be violated if a person, consciously choosing to transgress society's law, were subjected to substantially greater punishment than was previously understood to be the consequence of the transgression.[15] However, defending a citizen's right to, in effect, conduct a cost-benefit analysis on the decision to violate the law is not an easy task. It is difficult to argue that, in a manner of speaking, an individual has a right to break the law if one is willing to pay the legislated cost, particularly when another is directly victimized by the act.[16] Nevertheless, fair

---

**13.** *See Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), and *Retroactivity of law: Should Bouie be buoyed?: Judicial Retroactive Lawmaking and the Ex Post Facto Clause*, Krent, Harold J., 3 Rogers Williams U.L.Rev. 35.

**14.** *Id.*, at p. 12–13.

**15.** Indeed, a trip down the highway readily reveals that numerous motorists exceed the posted speed limit. It can be safely assumed that most are doing so with full consciousness

of the fact that they are violating the speed limit and may be stopped and fined for their conduct. Fundamental concepts of fairness would not seemingly allow them to be surprised with the knowledge that, rather than the fine specified in the appropriate legislation, they now face a one-year jail sentence.

**16.** This equation might be very defendable in the context of certain violations that do not appear to victimize anyone. For instance, protestors might have been charged with disorderly conduct, defiant trespass or similar

notice of the consequences clearly could have import in the reflective decision to violate the law. Undoubtedly, if the penalty for speeding were suddenly changed to one month's jail time, many motorists who now freely flaunt the speed limit would stop doing so in response to the change in penalty. Thus, it can be argued that the notice aspect is fundamental to deterrence of criminal conduct. Notice of jail time for speeding will change that cost/benefit analysis and deter unlawful conduct, however, retroactive application cannot deter what has already transpired. Thus, notice still has a societal value in this context, even if there is an element of amorality in allowing people to make a conscious decision to violate the law at a specified cost.

¶ 8 Regardless of whether one believes in all of the interests underlying the *ex post facto* doctrine, it would seem relatively clear that affirming the judgment of multiple sentences in the present case would not truly violate them. First, appellant's conduct was unlawful both prior to and after it occurred. Thus, this is not a case where Appellant would be punished for conduct that was lawful when it took place. Second, the statutorily prescribed penalty for the conduct was consistent throughout the relevant time. Thus, the theoretical penalty for Appellant's conduct has not been changed in some form of vindictive overreaction of the legislature. Third, the crime(s) in question does not relate to conscious violation of the law, and, fourth, it is highly dubious to assert that Appellant was aware of the decisional law that suggested that he could only be punished once for the criminal act in question, regardless of the number of victims.[17]

Thus, Appellant's expectation interest has not been transgressed and it cannot be said that, had he known that he could be subjected to more than one sentence, he would have abstained from the criminal conduct in question. Lastly, the decision in question merely corrects what apparently was a faulty prior holding. Thus, prohibiting the application of the new holding merely allows Appellant, and others like him, to benefit from erroneous law.

¶ 9 In short, it does not appear that any of the interests sought to be protected by the *ex post facto* clause are transgressed when a court of law "corrects" a conceptual error of law and then allows the "correct" legal concept to apply to cases still in litigation. Thus, clearly the utility of applying *ex post facto* concepts to the present situation must be questioned. Nevertheless, as I indicated above, from a standpoint of logical application of legal principle, the decision would appear unassailable. Thus, I reluctantly join the decision of the majority.

minor offenses in expressing their beliefs. In a society that values free speech, it might be considered defensible to commit such a transgression in defense of a cause. The protestors might understand that they could be arrested and might weigh that risk against the cause they are pursuing. Indeed, such actions played an integral part in the civil rights movement and are also common in today's anti-abortion demonstrations. Despite the civil disobedience of this conduct, society, in general, might not find such action that offensive. However, when the violation involves directly injuring another, it would seem dubious that society would seek to protect that interest.

17. No one is asserting that Appellant crashed the vehicle consciously after consideration of the fact that he could only be given one sentence regardless of how many people he injured or killed in the process.